**L. Grant Foster, 7202**
gfoster@hollandhart.com
**Brett L. Foster, 6089**
bfoster@hollandhart.com
**Mark A. Miller, 9563**
mmiller@hollandhart.com
HOLLAND & HART LLP
60 East South Temple, Suite 2000
Salt Lake City, UT 84111-1031
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700

*Attorneys for Plaintiff*
K-TEC, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **K-TEC, Inc.**, a Utah corporation,<br><br>　　　Plaintiff,<br><br>vs.<br><br>**Vita-Mix Corp.**, an Ohio corporation,<br><br>　　　Defendant. | **MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE AND STRIKE EXPERT OPINIONS RE: UNPLEADED CLAIMS**<br><br>Case No. 2:06-CV-00108<br><br>Judge Tena Campbell<br>Magistrate Judge Paul M. Warner |

　　　Plaintiff K-TEC, Inc. ("K-TEC") respectfully submits this Memorandum in support of its Motion to Exclude and Strike the opinions of the expert witnesses retained by Defendant Vita-Mix Corporation ("Vita-Mix") concerning inequitable conduct claims that are not pleaded and are not at issue in this case.

4706807_1.DOC

## INTRODUCTION

Discovery closed on December 18, 2009.  Vita-Mix served two expert reports on January 15, 2010.  Both reports included purported expert opinions on inequitable conduct assertions that are not pleaded in this case.  K-TEC has pursued its discovery, expert work, and other trial preparation in this case for nearly <u>four (4) years</u> relying on Vita-Mix's <u>pleaded</u> allegations of inequitable conduct.  The new <u>unpleaded</u> allegations raised by Vita-Mix's experts should be excluded.  They have no place in this case.  It would severely prejudice K-TEC if the Court allowed Vita-Mix to belatedly raise all of these new, unpleaded inequitable conduct claims via Vita-Mix's expert reports.  K-TEC brings this Motion asking the Court to exclude and strike the <u>irrelevant</u> opinions from Vita-Mix's experts regarding unpleaded inequitable conduct claims.

## BACKGROUND

In K-TEC's view, Vita-Mix has already unnecessarily multiplied the proceedings by numerous filings in an attempt to belatedly raise inequitable conduct claims that were abandoned and not pursued prior to the close of discovery.  With apologies to the Court for restating the factual background generally recited in the briefing of several other related motions, K-TEC provides the following background concerning the one and only inequitable conduct claim that Vita-Mix has pleaded in this case, which has been the subject of discovery, a motion for summary judgment, and which K-TEC has otherwise addressed in connection with its trial preparation.

1.       K-TEC filed this patent infringement lawsuit in February 2006 asserting infringement of the '117 patent.[1]  Dkt. No. 1.

---

[1] U.S. Patent No. 6,979,117.

2.      In its original answer, Vita-Mix asserted counterclaims of noninfringement, invalidity, and unenforceability for inequitable conduct.  Dkt. No. 8.  K-TEC informally challenged Vita-Mix's initial inequitable conduct counterclaim.  In response, on June 14, 2006, Vita-Mix filed an amended answer and counterclaim *removing* all allegations of inequitable conduct and unenforceability.  Dkt. No. 10.

3.      The deadline to amend pleadings passed over three years ago on October 2, 2006. Dkt. No. 17, p. 2.  Vita-Mix did not amend its pleadings to allege inequitable conduct, nor did Vita-Mix give any indication that it would pursue an inequitable conduct defense or counterclaim in the '117 patent case.

4.      Due to reexamination proceedings concerning the '117 patent, the Court stayed this case in May 2007.  Dkt. No. 139.  At the time the case was stayed, Vita-Mix had more than fifteen (15) months from the date the lawsuit was filed up through the time it was stayed in which to evaluate its claims, consult with experts, and conduct discovery.[2]

5.      In October 2007, the '842 patent[3] issued.  K-TEC filed suit against Vita-Mix on this patent in a separate case, which was then consolidated with this action.  In April 2008, Vita-Mix asserted just one counterclaim of inequitable conduct relating to the '842 patent.  *See* Answer and Counterclaim to Amended Complaint at 11-13 (Dkt. No. 262).

6.      Due to reexamination proceedings relating to the '842 patent, the Court again stayed this case on April 25, 2008.  Dkt. No. 276.  At the time of this stay, Vita-Mix had an

---

[2] As a hollow attempt to justify efforts to depose trial counsel, Vita-Mix filed a motion for leave to amend its counterclaim to assert inequitable conduct in April of 2007, fourteen (14) months into the case, over six (6) months after the stipulated amendment deadline, and at a time when trial was only five (5) months away.  Dkt. No. 122. However, that motion was terminated pursuant to the stipulation of the parties shortly after the case was initially stayed, Dkt. No. 142.  Thereafter, the stay was lifted and Vita-Mix never renewed its motion.

[3] U.S. Patent No. 7,281,842.

additional six (6) months from the filing of the '842 patent case in which to evaluate its defenses, consult with experts, and conduct discovery.  During this six (6) month period, the parties engaged in extensive analysis of their claims and defenses in connection with a motion for preliminary injunction, which resulted in a two-day evidentiary hearing before the Court.

7.     After the Patent Office confirmed the validity of all claims in the '842 patent and confirmed the validity of many of the claims in the '117 patent during the reexaminations, the Court lifted the stay on May 22, 2009.  Dkt. No. 298.

8.     On October 21, 2009, K-TEC filed a motion to dismiss or in the alternative for summary judgment on Vita-Mix's one and only pleaded inequitable conduct counterclaim.  Dkt. Nos. 359, 407.  Prior to the time K-TEC filed its motion, Vita-Mix had enjoyed an additional five (5) months after the stay was lifted in which to analyze its defenses, consult with experts, and conduct discovery.  Thus, prior to the time K-TEC filed its motion for summary judgment, Vita-Mix had twenty-six (26) months of active litigation in which to analyze its defenses, consult with experts, and conduct discovery.  The twenty-six (26) months, of course, does not count the many months during which this case was stayed, when nothing precluded Vita-Mix from further analyzing its claims and consulting with experts, even though discovery from K-TEC could not be pursued during that time frame.

9.     Importantly, despite multiple scheduling conferences between the parties and with the Court over a period of six (6) months following the Court's order lifting the stay in this case, Vita-Mix never suggested or even hinted that it might seek to amend its pleadings to assert new inequitable conduct allegations.  (Dkt. Nos. 305, 308-312, 318-320, 325, 322, 330-331, 364, 365, 367-2, 367-2, 372).

10.     Just a few days prior to the December 18, 2009 discovery cutoff, Vita-Mix blind-sided K-TEC by filing a motion for leave to amend its counterclaims to add *numerous* additional allegations of inequitable conduct.  Dkt. No. 383.  This belated motion was filed more than forty-six (46) months after the '117 patent case was filed, approximately twenty-six (26) months after the '842 patent case was filed, and after Vita-Mix enjoyed twenty-eight (28) months of active, non-stayed litigation to evaluate its defenses, consult with experts, and conduct discovery.

11.     K-TEC has opposed Vita-Mix's grossly tardy motion and incorporates by this reference its opposition memorandum to provide further factual and legal context concerning the present Motion.  Dkt. No. 406.[4]

12.     Over the past four (4) years, K-TEC has formulated and pursued its discovery plan (fact and expert) in reliance upon Vita-Mix's initial withdrawal of its inequitable conduct claims relating to the '117 patent case, and in reliance on the fact that Vita-Mix asserted only one inequitable conduct claim in the '842 patent case, which is now the subject of a summary judgment motion.

13.     On January 15, 2010, Vita-Mix served K-TEC with the Expert Report of James A. Sheridan ("Sheridan Report").[5]  The Sheridan Report purports to offer expert opinions on the issue of inequitable conduct.  Most of the opinions presented in the Sheridan Report relate exclusively to Vita-Mix's **unpleaded** inequitable conduct allegations that are **not at issue in this**

---

[4] The formal document is entitled "Memorandum in Opposition to Vita-Mix Corporation's Motion for Leave to Amend its Answer to Plaintiff's Amended Complaint," Dkt. No. 406.  K-TEC also incorporates by this reference its Memorandum in Opposition to Vita-Mix's Corporation's Motion for Entry of Default Judgment, Dkt. No. 409, and Plaintiff's Combined Memorandum Supporting (In Reply) its Motion to Dismiss/For Summary Judgment on Inequitable Conduct Counterclaim, Opposing Motion for Continuance, and Opposing Motion to Strike, Dkt. No. 407.

[5] The Sheridan Report has been designated Confidential under the Protective Order and, therefore, filed separately under seal (without the exhibits) as Exhibit A to this Motion.

**case**.  *See* Sheridan Report at 20-25, 29-39 (Ex. A).  *Compare* Answer and Counterclaim at 11-13 (Dkt. No. 262) *with* Vita-Mix's [Proposed] Amended Answer and Counterclaim at 12-24 (Dkt. No. 388-1).  K-TEC has shaded the portions of the Sheridan Report in Exhibit A that relate to unpleaded inequitable conduct claims and to which K-TEC seeks an order of exclusion under the present Motion.

14.    Also on January 15, 2010, Vita-Mix served K-TEC with the Expert Report of Lee A. Swanger ("Swanger Report").[6]  Paragraph 129 in the Swanger Report also relates exclusively to an **unpleaded** inequitable conduct allegation that is **not at issue in this case**.  *See* Swanger Report at 36 (Ex. B).  K-TEC has shaded the portions of the Swanger Report in Exhibit B that relate to unpleaded inequitable conduct claims and to which K-TEC seeks an order of exclusion under the present Motion.  K-TEC refers to the Sheridan Report and Swanger Report collectively as Vita-Mix's "Expert Reports."

15.    The deadline for K-TEC to serve responsive expert reports is January 29, 2010. K-TEC is prepared to and will present an expert report rebutting the opinions of Mr. Sheridan relating to Vita-Mix's single pleaded inequitable conduct claim (concerning which K-TEC's dispositive motion remains pending).[7]  Mr. Sheridan's opinions on the pleaded claim account for

---

[6] The Swanger Report has been designated Confidential under the Protective Order.  Because this Motion only addresses paragraph 129 of the Swanger Report, that portion has been filed separately under seal (without the exhibits) as Exhibit B to this Motion.

[7] It is telling that Mr. Sheridan fails to even acknowledge the central basis on which K-TEC has asked the Court to enter summary judgment dismissing Vita-Mix's inequitable conduct counterclaim.  In short, the duty of disclosure during the patent prosecution process **does not require**, and never has required, disclosure of cumulative information.  Pursuant to 37 C.F.R. § 1.56, information is **not material** to patentability, and therefore need not be disclosed, if it is simply "cumulative to information already of record or being made of record in the application." K-TEC's summary judgment briefing focuses on the undisputed fact that the information Vita-Mix accuses K-TEC of not disclosing to the Patent Office was merely cumulative, indeed duplicative, of information that was already of record through K-TEC's prior submissions.  (Dkt. Nos. 359, 407).  Mr. Sheridan studiously ignores the "cumulative" portion of § 1.56 in his report, *see* Sheridan Report at 11-12, and fails to offer any opinions that rebut K-TEC's summary judgment papers.

about three (3) pages of his report.  *See* Sheridan Report at 26-28.  In contrast, the opinions Mr. Sheridan proffers with respect to underlined unpleaded counterclaims and allegations account for approximately seventeen (17) pages of his report.  *Id*. at 20-25, 29-39.

16.     Responding to Vita-Mix's unpleaded and irrelevant expert opinions would require additional investigation and/or discovery, would effectively increase K-TEC's expert fees five fold, and would likely delay trial.  The '117 patent case was originally set for trial in November 2007.  The trial was later rescheduled for November 2008 after K-TEC asserted the '842 patent. Recently, this case was set for a March 2010 trial date, which was then adjusted to June 7, 2010 to accommodate accelerated expert discovery, summary judgment motions, and pretrial proceedings.  Further delays would severely prejudice K-TEC.  In short, addressing Vita-Mix's eleventh-hour counterclaims will unfairly dilute K-TEC's ability to prepare for trial on the real issues in the case that were timely pleaded.

17.     The parties agreed to an accelerated expert schedule in this case that allowed a mere two (2) weeks between initial expert disclosures (due January 15, 2010) and responsive expert disclosures (due January 29, 2010), and an additional two (2) weeks thereafter for rebuttal expert disclosures (due February 12, 2010).  Dkt. Nos. 364, 372.  In reaching this agreed schedule and presenting it to the Court, K-TEC relied upon the fact that Vita-Mix had only pleaded a single inequitable conduct claim.

<u>**ARGUMENT**</u>

**I.    VITA-MIX CANNOT CREATE NEW INEQUITABLE CONDUCT DEFENSES THROUGH EXPERT REPORTS**

Patent infringement cases tend to be highly contested, as the present case has been.  One of the unfortunate by-products of patent cases has been unjustified inequitable conduct claims. More than twenty (20) years ago, the Federal Circuit indicated "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Industry, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).  Baseless claims of inequitable conduct tend to derail the parties and the Court from legitimate issues.  "The charge of inequitable conduct before the Patent Office has come to be attached to every patent prosecution, diverting the court from genuine issues and simply spawning satellite litigation." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995).  "Unjustified" accusations of inequitable conduct, "may deprive patentees of their earned property rights and impugn fellow professionals. They should be condemned." *Id.*

The inequitable conduct claims addressed in Vita-Mix's Expert Reports are unjustified. Federal pleading rules are designed to give parties adequate and reasonable notice of the claims being asserted against them.  Like fraud, a defense or counterclaim of inequitable conduct (a/k/a fraud on the Patent Office) "must be plead with particularity" pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and cannot be "inferred" from general allegations. *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (affirming district court's decision to strike general inequitable conduct allegations for failing to satisfy the heightened pleading requirements of Rule 9).

4706807_1.DOC

In the present action, Vita-Mix has pleaded a single claim of inequitable conduct.  That claim is the subject of a pending motion for summary judgment.  Vita-Mix knows full well that it has only asserted one claim, and that the Court is likely to decide that claim as a matter of law on K-TEC's pending motion.  That is why, as part of its responsive strategy at the close of discovery in this four (4) year old case, Vita-Mix filed (albeit without any good cause to support it under Rule 16) a motion for leave to assert a plethora of additional inequitable conduct counterclaims that are equally baseless.

But this is not all.  Instead of waiting for the Court to resolve that motion, Vita-Mix presumptuously acts as though its motion has been granted and presents opinions via the Expert Reports on issues that are unpleaded and are only identified in its *proposed* amended counterclaims, for which leave of court is not likely to be granted.  Once again, instead of allowing the orderly administration of justice in this case, Vita-Mix unnecessarily complicates and multiplies the proceedings by trying to force its will on both K-TEC and the Court.

Vita-Mix cannot create a new infringement defense or counterclaim through its Expert Reports.  For example, in *Hochstein v. Microsoft Corp.*, 2009 WL 2498481 (E.D. Mich. 2009) (copy attached as Exhibit C), the Eastern District of Michigan excluded expert opinions presented on unpleaded allegations.  There, after the close of discovery, the plaintiff presented an expert report which addressed new, unpleaded infringement theories.  "This post-discovery-deadline expert testimony marked the first time that plaintiff specifically" raised this infringement theory.  *Id*. at 3.  The court properly precluded the plaintiff from pursing the new infringement claim and excluded the expert reports (and all other evidence) relating to the unpleaded claim:

> The court concludes that a patent Plaintiff cannot create a new infringement theory in their expert reports after the discovery deadline has passed; this must be done in a timely amended complaint or . . . during the period for discovery.
>
> * * * *
>
> . . . Plaintiffs had ample time to develop their legal theories and consult their experts during open discovery.  Plaintiffs have offered no plausible reason why they could not have discovered [the new infringement claim] and then amended the pleadings to [assert the infringement claim] during the course of discovery. . . . Just because expert reports were not due until after discovery closed, does not mean that discovery deadlines evaporate; plaintiffs could have consulted with their expert prior to the close of discovery to ensure that they had accused all possible infringing products.

*Id.* at 3-4.

Vita-Mix cannot simply assume that by presenting its Expert Reports, it can bring unpleaded inequitable conduct claims into the case after the close of discovery.  Here, as in *Hochstein*, Vita-Mix's Expert Reports raise new, unpleaded inequitable conduct defenses.  That Vita-Mix belatedly asked the Court for leave to amend its pleadings just days before discovery closed does not justify Vita-Mix's conduct.  Vita-Mix knows that the Court has not yet ruled on its motion, and that the prospect of amendment this late in the case is unlikely.  All of this leaves K-TEC completely bewildered by Vita-Mix's approach – presumptuously presenting its Expert Reports on new, unpleaded issues.

To be sure, Vita-Mix, like the plaintiff in *Hochstein*, had ample opportunity to study the issues, the file histories of the patents, consult with its expert, and present all defenses it desired in a timely amended counterclaim that would have permitted further discovery on the new issues. Indeed, Vita-Mix had almost four (4) years to consult with experts and evaluate its defense theories.  It had twenty-one (21) months of active litigation before the '842 patent case was

stayed in order to seek leave to assert whatever claims it thought were appropriate.  After the stay was finally lifted in April of 2009, Vita-Mix could have immediately thereafter filed for leave to amend and pursue new inequitable conduct claims.  If the motion had been granted then, it would have given K-TEC sufficient time to investigate, conduct any necessary discovery, and be prepared to present expert reports on all new issues.  Vita-Mix failed (or tactically refused) to do so.  Instead, it waited six (6) months and filed its motion just days before discovery concluded.  K-TEC should not be severely prejudiced due to Vita-Mix's inaction.

Not lost on the Court (and certainly not lost on K-TEC) should be Vita-Mix's desire to continue to delay the proceedings.  It appears Vita-Mix's Expert Reports are just the latest in a series of carefully calculated steps throughout this four (4) year old case to delay its day of reckoning.  For K-TEC to adequately respond to these new allegations would almost certainly require postponing the current trial date, which is likely what Vita-Mix hopes for.  Any further extension of the trial schedule in this case, however, would not only prejudice K-TEC, who has waited four (4) years now, but would reward Vita-Mix for the dilatory approach it has taken concerning its defenses and counterclaims.  If these new claims had any merit, they would have been raised years ago when Vita-Mix learned of the underlying facts stated in its proposed amended counterclaims.  The fact that Vita-Mix's other defenses are proving ineffective does not justify the sandbagging tactic of raising all new defenses in the final inning of the game.  K-TEC's Motion should be granted and the irrelevant expert opinions should be excluded from the case.

## II.  VITA-MIX'S BELATEDLY FILED MOTION FOR LEAVE TO AMEND DOES NOT BREATHE LIFE INTO VITA-MIX'S PLAINLY IMPROPER EXPERT REPORTS

It is not unusual for a party to respond to a dispositive motion by seeking leave to amend its pleading to include additional claims or defenses.  But Vita-Mix's motion comes way too late in time.  After <u>twenty-six (26) months of active litigation</u>[8] in this case, K-TEC filed its motion for summary judgment on the sole inequitable conduct claim raised by Vita-Mix in its pleadings.  Vita-Mix's first response was to seek additional time to oppose the motion.  Then, after <u>twenty-eight (28) active months of litigation</u> and <u>just a few days prior to the December 18, 2009 close of discovery</u>, Vita-Mix filed its opposition papers and a motion for leave to significantly amend its counterclaims to include a plethora of new inequitable conduct claims.  K-TEC views Vita-Mix's flurry of motion practice at the close of discovery and its grossly tardy attempt to assert new claims in this nearly four (4) year old case as an admission that the pleaded claims will not survive the Court's legal scrutiny.  In any event, it does not justify submitting the Expert Reports on unpleaded issues.

In *Pickern v. Pier 1 Imports*, 457 F.3d 963 (9th Cir. 2006), the defendant moved for summary judgment.  In response, the plaintiff raised new claims in the form of an expert report to avoid summary judgment.  The court saw through the transparent tactic and the Ninth Circuit affirmed:

> Although the new allegations were not part of the original complaint, [plaintiff] might have proceeded by filing a <u>timely</u> motion to amend the complaint.  However, [plaintiff] did not amend the complaint to include more specific allegations. . . . In addition, because the expert's report [in which the new claims were raised] was not filed and served until after the discovery

---

[8] "Active litigation" does <u>not</u> include the substantial period when the case was stayed.

> deadline, that report cannot be construed as notice that would prompt [defendants] to seek discovery regarding the new allegations. Thus, the district court did not err in finding that [plaintiff] failed to provide adequate notice of the new allegations.[9]

*Id.* at 969 (emphasis added). The same is true here, neither Vita-Mix's motion to amend nor its Expert Reports provided K-TEC adequate notice of its new allegations, which K-TEC has not evaluated or taken into account in any of its discovery, expert, and other pre-trial preparations.

The District of Kansas' decision in *Enfield v. AB Chance Company*, 1997 WL 157237 (D. Kan. 1997) (unpublished)[10] is also helpful. There, after the close of discovery, the defendant moved for leave to amend their answer to add a defense on November 15, 1996. *Id*. at *1. The plaintiff opposed the motion. *Id*. Thereafter, on January 3, 1997, the defendant mailed an expert report addressing the new claims which were in the proposed amended answer. *Id*. The District of Kansas denied the motion to amend (and thus necessarily excluded all expert testimony relating to the unpleaded claim) for several reasons. First, the court reasoned that if the new claims were allowed, it would necessarily require additional discovery. Because of this "[t]he trial would need to be delayed, and given the court's calendar, it would be another year before it could be rescheduled." *Id.* at *3. The court also indicated that "[d]elay for strategic purposes is not justification for granting leave to amend." *Id.*

Similarly, the trial in this case has already been delayed at least three (3) times because of Vita-Mix's procedural maneuvering. There is no justification for its grossly belated motion for leave to amend. Certainly, an expert report in response to a summary judgment motion cannot justify the addition of new claims or the expenditure of time and money by K-TEC on expert

---

[9] The district court also excluded the expert's testimony, which the Ninth Circuit affirmed.

[10] A copy of this decision is attached as Exhibit C.

6

issues that are unpleaded.  If the Court were to permit these new counterclaims this late in the game, K-TEC would be required to conduct an investigation and perhaps further discovery.  It would also need to consult with experts and likely present additional expert testimony on a host of new allegations, which would unjustifiably and substantially prejudice K-TEC.  *See Crabb v. State Farm Fire and Cas. Co.*, 2006 WL 1214998 at *8 (D. Utah 2006) (unpublished) ("the prejudice to State Farm could possibly be cured by nonetheless allowing a belated expert report followed by a deposition . . . (and possibly additional expert reports from the defense and a new round of discovery for the plaintiffs), but the court has given ample time for the development of this case already.  Trial had already been set once for March 27, 2006, and canceled once already, so further time to allow for an expert report and depositions that should have been conducted long ago").[11]  K-TEC's Motion should be granted.

### III.    VITA-MIX'S EXPERT REPORTS ALSO FAIL TO SURVIVE *DAUBERT*

Rule 702 of the Federal Rules of Evidence permits the presentation of expert opinions if such opinions relate to "a fact in issue" in the case.  Under this Rule, an expert's testimony must be both reliable, in that the witness is qualified to testify regarding the subject, and **relevant**, in that it will assist the trier in determining a fact in issue.  *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92 (1993); *Truck Insurance Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) ("Analysis under Daubert is intended to ensure that the evidence is both 'reliable' and 'relevant'") (citing *Daubert*).

To be relevant, the testimony must "fit" the facts of the case.  *Daubert*, 501 U.S. at 591. That is, the proffered opinions must speak clearly and directly to an issue in dispute in the case.  *In*

---

[11] A copy of this decision is attached as Exhibit D.

*re Breast Implant Litigation*, 11 F.Supp.2d 1217, 1223 (D. Colo. 1998).  The district court acts as a "gatekeeper" to preclude improper and irrelevant opinions from being presented.  *See Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  Because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful," such testimony should be excluded.  *Daubert*, 501 U.S. at 591.

The shaded opinions in the Sheridan Report and the Swanger Report are not relevant to this case.  They do not fit the facts of this case, because they don't speak to any of the claims and allegations set forth in Vita-Mix's Answer and Counterclaim.  Instead, they relate exclusively to claims Vita-Mix has sought leave to raise at the eleventh hour of this four (4) year old case despite having knowledge of the underlying facts for years.  Accordingly, the Court should exclude and/or strike these portions of the Expert Reports as not relevant to this case.

As explained above, Vita-Mix's Expert Reports further highlight the prejudice that would befall K-TEC if the Court allowed Vita-Mix to amend its pleadings so late in this case.  If Vita-Mix is allowed to amend its pleading to make the opinions of its experts relevant, then K-TEC's expert costs in this case will increase five fold to respond to Vita-Mix's additional baseless allegations.  At $600 per hour (the hourly rate of K-TEC's expert), such an increase in costs will be substantial and unduly burdensome to K-TEC.  K-TEC should not have to bear this onerous expense, particularly where it relied on the absence of any further inequitable conduct claims in Vita-Mix's pleadings in conducting discovery and preparing for trial in this case.  The additional cost of further investigation and perhaps discovery is unwarranted.  The unfair delay of the trial (yet again) would be inevitable.  The irrelevant opinions of Vita-Mix's experts simply have no place in this case and should be excluded and/or stricken.

4706807_1.DOC

## CONCLUSION

For the foregoing reasons, the Court should exclude and/or strike paragraph 129 in the Swanger Report and pages 20-25 and 29-39 and related content from the Sheridan Report (as indicated by the highlighting in Exhibit A), which concern unpleaded inequitable conduct claims.[12]

Dated this 21st day of January, 2010.

Respectfully Submitted,

/s/ Mark A. Miller
L. Grant Foster
Brett L. Foster
Mark A. Miller
HOLLAND & HART LLP
*Attorneys for Plaintiff*

---

[12] In the unlikely event the Court grants Vita-Mix leave to amend its Answer and Counterclaims to include a multitude of new inequitable conduct allegations, K-TEC asks that the Court give it sufficient time in which to thoroughly evaluate, investigate the new claims, conduct all appropriate discovery, prepare a responsive expert report on the new issues, and submit summary judgment motions on the new claims. We are much too far along the track toward trial to justify a derailment at the eleventh hour.

4706807_1.DOC