IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| K-TEC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VITA-MIX CORPORATION, <br><br> Defendant. | ORDER <br><br><br><br><br> Case No. 2:06-CV-108 |

K-TEC owns U.S. Patent No. 6,979,117 (the '117 patent) and U.S. Patent No. 7,281,842 (the '842 patent). The K-TEC patents claim a blending jar device.

K-TEC has moved for an order of summary judgment that the First Vita-Mix Jar, also called the "Old Vita-Mix Jar" or the "MP Container," satisfies every limitation of claim 4 of the '117 patent and that Vita-Mix will be liable for infringement if the trier of fact finds that Vita-Mix made, used, sold or offered for sale the First Vita-Mix Jar after the '117 Patent was issued. (Dkt. No. 360.) K-TEC also seeks an order that the Second Vita-Mix Jar, the XP Container, satisfies at least claim 4 of the '117 Patent and claims 1, 9 and 11 of the '842 patent. (Id.)

Vita-Mix has filed competing motions for summary judgment, first contending that K-TEC has no evidence that Vita-Mix imported, made, used, sold or offered to sell any of the First Vita-Mix Jars after the K-TEC patents were issued. (Dkt. No. 339.) In its second motion, Vita-Mix argues that the structure of the XP Container does not meet the limitations of the K-TEC patents. (Dkt. No. 471.)

The court agrees with K-TEC and finds that the XP Container literally infringes claim 4 of the '117 Patent and claims 1, 9 and 11 of the '842 Patent. The court also finds that if Vita-Mix made, used or sold the First Vita-Mix Jar after the '117 patent was issued, the First Vita-Mix Jar literally infringes Claim 4 of the '117 Patent.[1]

**Analysis**[2]

Two steps are involved in determining infringement. First, the court construes the asserted claims. Tate Access Floors v. Interface Architectural Resources, 279 F.3d 1357, 1365 (Fed. Cir. 2002). Next, the court compares the properly construed claims to the accused device and decides whether each and every limitation of a claim is present in the accused device. Id.

In its claim construction order (Dkt. No. 358), the court determined that it needed to construe only one term, "truncated wall," a key term found in both patents. The court construed "truncated wall" as "a wall (planar or non-planar) that truncates, in essence, the typical corner that would otherwise be formed between two side walls." (Id. at 1.) The court also rejected Vita-Mix's proposed constructions that included a limitation requiring the truncated wall to form corners with two side walls. (Id. at 6.)

The invention here is not complex. The court does not need expert testimony to assist it in comparing the claims of the K-TEC patents to the XP Container. In Molecular Research Corp. v. CBS, Inc., 793 F.2d 1261, 1270 (Fed. Cir. 1986), the Federal Circuit made clear that the court has "never <u>required</u> a party to proffer expert testimony on claim interpretation or on application of

---

[1] Because there are material issues of fact in dispute regarding Vita-Mix's actions concerning the First Vita-Mix Jar after the '117 Patent was issued as discussed in detail below, the court denies Vita-Mix's motion for summary judgment. The court has yet to decide the motions alleging invalidity of the K-TEC Patents, the court recognizes that if a K-TEC patent is found to be invalid, then there will be no infringement of the invalid patent.

[2] The factual and procedural background underlying this dispute has often been described in other pleadings and orders. For that reason, the court will discuss only those facts necessary to explain this order.

2

claim language to accused devices." See also Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1369 (Fed. Cir. 2004).

**The First Vita-Mix Jar**

Vita-Mix contends that it did not make, use, sell or offer to sell the First Vita-Mix Jar after December 27, 2007, the date the '117 Patent was issued and therefore did not infringe the patent.[3]

Vita-Mix has submitted the affidavits of John Barnard, the president of Vita-Mix, and Steve Zimmerman, the production manager, in support of their motion. Their two affidavits were essentially the same. They testified that in October 2005 Vita-Mix changed the mold for the First Vita-Mix Jar so it could be used to manufacture the XP Container. They also testified that in December 2005 the blades were removed from the First Vita-Mix jars and the jars were stored in a Vita-Mix warehouse.

K-TEC argues that contrary to Vita-Mix's assertions, Vita-Mix was marketing the First Vita-Mix Jars after the '117 Patent issued. K-TEC contends that in order to disguise its infringing activities, Vita-Mix made only minor changes to the XP Container and kept the same item numbers for the XP Container that were used for the First Vita-Mix Jar. K-TEC has also submitted evidence that Vita-Mix acquired a large inventory of First Vita-Mix Jars shortly before December 27, 2005, and possibly after that date. Finally, K-TEC points to Vita-Mix marketing materials that were available on the Vita-Mix website long after December 27, 2005, that depict the First Vita-Mix Jar.

Based on this conflicting evidence, the court concludes that there are disputed issues of fact that preclude granting summary judgment.

---

[3]Vita-Mix does not contest that the structure of the First Vita-Mix Jar meets the limitations of Claim 4 of the '117 Patent.

**The XP Container**

Vita-Mix makes several arguments in support of its contention that the XP Container does not infringe the K-TEC Patents. First, Vita-Mix contends that "[c]orrectly applying K-TEC's 'corner' construction and K-TEC's argument that the XP Container has 'four side walls' in a light most favorable to K-TEC, the XP Container has only four side walls and four corners <u>but no fifth truncated wall</u>." (Vita-Mix Mem. Supp. Summ. J., at 10, Dkt. No. 481.) (emphasis in original.) Vita-Mix explains, "Simply put, a corner cannot truncate a corner." (<u>Id</u>. at 9.) Next Vita-Mix argues that the curved surface of its XP Container is a continuous surface, not two side walls and a fifth truncated wall. Vita-Mix's third contention is that the XP Container is the same structure shown in Figure 4 of United States Patent No. 7,063,456 B2 (the Miller Patent) and "K-TEC has admitted that the configuration shown in Figure 4 of the Miller patent–which is the configuration on which the XP Container is based–is a single surface that cannot be arbitrarily dissected into 'four side walls' and a 'fifth truncated wall.'" (<u>Id</u>. at 12.)

Visual inspection of the XP Container coupled with the court's Claim Construction Order demonstrate that Vita-Mix is ignoring the structural reality of the XP Container. The XP Container has four side walls that form intersecting corners and a fifth nonplanar wall between two of the side walls that truncates the typical corner that would be formed between the two side walls.

Vita-Mix and its expert, Dr. Albert Karvelis, appear to be simply rearguing the Claim Construction Order. Specifically, Dr. Karvelis labeled the two planar surfaces and the nonplanar surface as a single continuous surface because the planar surfaces do not form corners with the nonplanar surface. But the Claim Construction Order expressly rejected Vita-Mix's proposed constructions that required the truncated wall to form corners with two side walls.

Vita-Mix (again relying on Dr. Karvelis) next maintains that because the curved surface of the XP Container joins two converging walls, it is a corner, and a corner can't be a truncated wall. But during claim construction, K-TEC argued, and the court agreed, that whether a surface, planar or nonplanar, is a truncated wall depends on its location relative to the central axis of the container. The claim language describes the fifth truncated wall as closer to the central axis than the intersecting corners formed by the four side walls. And a visual inspection of the XP Container shows that the curved surface is closer to the central axis than the corners formed by the intersection of the four planar surfaces.

Vita-Mix's final argument is that its XP Container is based on the design of the Miller Patent, specifically Figure 4, and K-TEC has admitted that Figure 4 is a single surface that cannot be arbitrarily divided into four side walls and a fifth truncated wall. But the Miller Patent describes Figure 4 (and Figure 3) as flattened ellipses. Specifically, the Patent reads:

> In general, the FIG. 3 configuration is somewhat like a flattened ellipse having a curved area 27 on the side nearest to the axis 22 of blade assembly 20 and a flattened area 28 on the side further from the axis 22 of blade assembly 20.
> In the example shown in FIG. 4, the flattened area 28 shown in FIG. 3 has been modified to provide for two lobes 29, rendering the overall configuration generally heart-shaped.

( Comb. Mem. Opp. Summ. J. & Reply Supp. Sum,. J., Dkt. No. 503, Miller Patent, Ex. M at column 3-4)

The XP Container is not an ellipse. Recently the Patent Examiner recognized this and rejected a similar argument made by Vita-Mix. He explained that the Figure 3 configuration of Miller "is somewhat like a 'flattened ellipse.'"( Id., Final Rejection, Ex.N at 12. ) The Examiner continued:

> Since an ellipse is defined as a 'smooth closed curve' . . . it appears that the curved wall 27 in Fig. 4 of the provisional application (being derived from the flattened ellipse configuration of Fig. 3) is a single curved wall extending to intersections/

5

corners 34 and thus is not "a side surface (27) extending from the bottom surface (16) between two side walls (33)" as recited in amended claim 28, since a single curved surface of an ellipse would not include a curved surface with two adjoining flat walls.

(Id.at 13.)

Based on the above, the court GRANTS K-TEC's Motion for Summary Judgment of Infringement (Dkt. No. 360), DENIES Vita-Mix's Motion for Summary Judgment (Dkt. No. 339) and DENIES Vita-Mix's Motion for Summary Judgment (Dkt. No. 471).

DATED this  6   day of April, 2010.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge