IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| K-TEC, INC.,<br><br>　　　　　　　　Plaintiff,<br><br><br><br>　　vs.<br><br><br>VITA-MIX CORPORATION,<br>　　　　　　　　Defendant. | MEMORANDUM DECISION and<br><br>ORDER<br><br><br><br><br><br>Case No. 2:06-CV-108 |

K-TEC and Vita-Mix filed cross motions for summary judgment on the validity of U.S.
Patent No. 6,979,117 (the '117 Patent) and U.S. Patent No. 7,218,842 Patent (the '842 Patent)
(collectively the K-TEC Patents).  At the May 12, 2010 hearing, K-TEC narrowed its
infringement contentions and now contends that Vita-Mix infringes claim 4 of the '117 Patent
and claims 1 and 9 of the '842 Patent ("the Disputed Claims").  (Summ. J. Hr'g Tr., May 12,
2010, 10:4-6, 11:18-12:2.)  The court has previously found that Vita-Mix infringes these claims.
(Mem. Dec. and Order, April 6, 2010) ("Infringement Order").  Based on K-TEC's
representation that it will not raise claim 11 of the '842 Patent at trial, the court vacates as moot
the portion of the Infringement Order pertaining to that claim.  The court now addresses whether

the Disputed Claims are valid.[1]

K-TEC seeks an order of summary judgment that the Disputed Claims are not invalid as anticipated or obvious. (Dkt. Nos. 464, 468.) K-TEC argues that no prior art references contain every claim of the K-TEC Patents, that many of the prior art references cited by Vita-Mix are outside the scope of prior art, and that the references that are within the scope of prior art do not render the K-TEC Patents obvious to one skilled in the art. Vita-Mix contends that the Disputed Claims are invalid because they are anticipated by and obvious as a matter of law (Dkt. No. 475).

To prove invalidity, Vita-Mix points to U.S. Patent No. 7,063, 456 to Miller (Miller); U.S. Patent No. 6,431,744 to Ash (Ash), U.S. Patent No. D227,535 to Grimes (Grimes); U. S Patent No. 5,129,419 to Prothe (Prothe); and the K-TEC Square Jar and related promotional material (K-TEC Square Jar). K-TEC does not limit its arguments to these five prior art references but instead addresses all prior art asserted by Vita-Mix during the course of these proceedings. In support of its arguments, K-TEC's primary contention is that neither Miller or Ash discloses the truncated wall found in the Disputed Claims. K-TEC maintains that several of the asserted references do not fall within the scope of relevant prior art because they are not connected in any way with blending. K-TEC further contends that Miller does not disclose a generally rectangular shape found in the Disputed Claims. Moreover, K-TEC points out that Ash does not disclose the handle limitation of claim 4 of the '117 Patent and Claim 1 of the '842 Patent. (Claim 9 of the '842 Patent does not disclose a handle.) Finally, K-TEC points out that Vita-Mix has presented only conclusory evidence on the issue of obviousness.

---

[1] This order is one of the many orders in this case. The earlier orders and the voluminous pleadings filed by the parties describe the factual and procedural background. For that reason, the court will give only those facts and background necessary to this order.

Although the court agrees with K-TEC that certain prior art references do not fall within the scope of the relevant prior art and also agrees that claim 4 of the '117 Patent and claim 1 of the '842 are not anticipated by Ash, the court finds that disputed issues of material fact preclude the granting of summary judgment of either K-TEC's or Vita-Mix's motion. Accordingly, the court DENIES Vita-Mix's motion for summary judgment and GRANTS in part and DENIES in part K-TEC's motion for summary judgment.

ANALYSIS

Standard of Review and Burden of Proof

Rule 56 of the Federal Rules of Civil Procedure permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Id. at 249.

When deciding a motion for summary judgment, the court considers the record evidence using the same evidentiary standard of proof that would apply at trial. Id. at 252-53. Only clear and convincing evidence can overcome the presumption of validity that attaches to issued patents. See United States Surgical Corp. v. Ethicon, 103 F.3d 1554 (Fed. Cir. 1997).

"[T]he moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002). To show that no genuine issue of material fact exists, the moving party has "the

initial burden of production . . . and the burden of establishing that summary judgment is appropriate as a matter of law." Pelt v. Utah, 539 F.3d 1271, 1280 (10th Cir. 2008). The burden of production is the burden of "both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." Tech. Licensing Corp. v. Videotek, 545 F.3d 1316, 1327 (Fed. Cir. 2008). If the moving party bears the ultimate burden of persuasion at trial on the issue for which summary judgment is sought, it cannot shift the burden of production "merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact." Id. Rather, the burden of production on such an issue shifts to the nonmoving party only after the moving party has "establish[ed], as a matter of law, all essential elements of the issue." Id. "[W]hen a party has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case in accordance with the applicable standard of proof, summary judgment is properly granted against that party." Optium Corp. v. Emcore Corp., ___F.3d___, 2010 WL 1783240, No. 2009-1265 at *4 (C.D. Pa. May 5, 2010).

At trial, the plaintiff has the burden to prove each of its claims against an alleged infringer, while the defendant has the burden to "prove all elements of the [affirmative] defense." Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1360 (Fed. Cir. 2009). A moving party seeking to invalidate a patent through summary judgment, here Vita-Mix, must submit such clear and convincing evidence of invalidity that no reasonable jury could find otherwise. Eli Lilly and Co. v. Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). Because Vita-Mix has the burden of proof on this affirmative defense at trial, it must put forth all of the elements of invalidity in order to shift the burden to K-TEC to show that its patents are valid. K-TEC, as the

moving party asking the court to hold that its patents are not invalid, must demonstrate that Vita-Mix has failed to produce clear and convincing evidence of invalidity.  Id.  When determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor.  Anderson, 477 U.S. at 255.

The Disputed Claims

The Disputed Claims each disclose a generally rectangular blending jar with a fifth truncated wall positioned closer to the central axis than the intersecting corners formed by the two side walls.  Claim 4 of the '117 Patent and claim 1 of the '842 patent require a handle affixed to the fifth truncated wall.

Claim 4 of the '117 Patent is dependant on claim 1.  A dependant claim incorporates all of the elements of the claim on which it depends.  See 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").  Claim 1 of the '117 Patent reads:

> An apparatus, comprising: a movable blending member; a blending jar, the blending jar comprising: a bottom wall with a ventral axis; four side walls extending from the bottom wall that form intersecting corners; a fifth truncated wall disposed between two of the four side walls; a handle secured to the blending jar at the truncated fifth wall; wherein the fifth truncated wall is positioned closer to the central axis than the intersecting corners formed by the four side walls.

('117 Patent (attached as Ex. A to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465) (emphasis added).)  Claim 4 adds, "An apparatus according to claim 1 wherein the four walls are arranged in a generally rectangular, tapered shape."  (Id. (emphasis added).)

Claim 1 of the '842 Patent reads:

> A blending jar apparatus, comprising: a blending jar having a blending element which rotates on a central axis, the jar to hold at least one foodstuff to be blended, the

5

blending jar comprising: a bottom wall; four side walls extending from the bottom wall, the four side walls defining an opening having a <u>generally rectangular shape</u>, the opening being configured to receive the [sic] at least one foodstuff; a fifth truncated wall disposed between two of the four side walls; <u>a handle</u> secured to the blending jar adjacent to the fifth truncated wall; wherein the <u>fifth truncated wall is positioned closer to the central axis than corners formed by the four side walls</u>.

('842 Patent (attached as Ex. A to Mem. Summ J. No Invalidity '842 Patent, Dkt. No.469)

(emphasis added).)  Claim 9 of the '842 Patent reads:

A blending jar apparatus comprising: a blending jar having a blending element which rotates on an axis, the jar to hold at least one foodstuff to be blended, the blending jar comprising: four planar side walls extending upward from a bottom wall, the four side walls defining a <u>generally rectangular area</u>, the axis being centrally located relative to corners forming the generally rectangular area; a fifth truncated wall disposed between two of the four side walls; and wherein <u>the fifth truncated wall is positioned closer to the axis than corners formed by the four side walls</u>.

(<u>Id.</u> (emphasis added).)

The court has construed the term "truncated wall" to mean "a wall (planar or non-planar) that truncates, in essence, the typical corner that would otherwise be formed between two side walls."  (Order and Mem. Decision 2, 6, October 23, 2009, Dkt. No. 358 ("Claim Construction Order").)  Tom Dickson, the inventor on the K-TEC Patents, explained that locating the truncated wall closer to the center axis improved blending performance by reducing cavitation. (Dickson Aff. (attached as Ex. W to Mem. in Supp. of Summ. J. No Invalidity '842 Patent, Dkt. No. 469); Dickson Dep. 121-128, November 10, 2009 (attached as Ex. 6 to Mem. Opp. to K-TEC's Mot. Summ. J., Dkt. No. 509).)

<u>Anticipation and Obviousness</u>

"[A] determination of anticipation, as well as obviousness, involves two steps.  First is construing the claim, a question of law for the court, followed by . . . a comparison of the

construed claim to the prior art." Key Pharms. Inc. v. Hercon Labs Corp., 161 F.3d 709, 714

(Fed. Cir. 1998). Although the comparison of the disputed claim with prior art to determine

anticipation and obviousness are factual inquiries, the court is not required nor is it permitted "to

accept confusing or generalized testimony as evidence of invalidity." Schumer v. Lab. Computer

Sys., Inc., 308 F.3d 1304, 1316 (Fed. Cir. 2002).

a. Anticipation

"An anticipating reference must describe the patented subject matter with sufficient

clarity and detail to establish that the subject matter existed in the prior art and that such

existence would be recognized by persons of ordinary skill in the field of the invention." Crown

Operations Int'l. v. Solutia, Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002). "For a prior art reference

to anticipate in terms of 35 U.S.C. § 102, every element of the claimed invention must be

identically shown in a single reference." Diversitech Corp. v. Century Steps, Inc., 850 F.2d 675,

677 (Fed. Cir. 1988) (emphasis added). This "identity" requirement demands that "[e]very

element of the claimed invention must be literally present, arranged as in the claim. . . .[– t]he

identical invention must be shown in as complete detail as is contained in the patent claim."

Richardson v. Suzuki Motor Co., LTD., 868 F.2d 1226, 1236 (Fed. Cir. 1989). "What a prior art

reference discloses is . . . a question of fact . . . ." Innogenetics N.V. v. Abbott Labs., 512 F.3d

1363, 1378 n.6 (Fed. Cir. 2008); see also, In re Clay, 966 F.2d 656, 658 (Fed. Cir. 1992).

Vita-Mix contends that Miller and Ash anticipate the K-TEC Patents.

1. Miller

Vita-Mix argues that Miller anticipates the K-TEC Patents because it discloses a

truncated wall closer to the central axis than the corners formed by the other side walls and, in a

7

different embodiment, discloses a generally rectangular shape.  (See Miller Patent (attached as Ex. E to Vita-Mix's Mem. Summ. J., Dkt. No. 484.)  Vita-Mix points to the testimony of its expert, Dr. Lee Swanger, who opined that Figure 4 of the Miller patent discloses a fifth truncated wall disposed between two of the four side walls, thereby meeting the court's construction of the truncated wall  limitation . (Swanger Rep. ¶ 76 (attached as Ex. B to Vita-Mix's Mem. Summ. J., Dkt. No. 484).)  Vita-Mix also cites the conclusion of the Patent Examiner that:

> Figure 4 of Miller can still be interpreted to read on claim 1 of the '117 Patent. . . . Miller discloses that  the blending jar comprises a bottom wall with a central axis; four planar side walls . . . extending from the bottom wall; and a curved fifth truncated wall 27 disposed between two of the four side walls; wherein the entire curved fifth truncated wall 27 is positioned closer to the central axis than corners 29 (See Figure 4).

(March 26, 2009 Office Action at 8 (attached as Ex. D to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).)

K-TEC counters that the Claim Construction Order held that Miller does not disclose a truncated wall as shown in the K-TEC Patents.  But K-TEC reads the court's order too broadly. In its order, the court addressed Vita-Mix's argument that during reexamination of its patents, K-TEC disclaimed curved walls.  K-TEC's response to Vita-Mix's contention was that K-TEC had distinguished its claimed truncated wall from the Miller Patent "not because it curved, but because it did not truncate a typical corner that otherwise would be formed."  (Claim Construction Order at 4, quoting Pl.'s Reply Br. at 9, Dkt. No. 346.)  The court agreed with K-TEC's explanation that it had not disclaimed curved walls in the prosecution of its patents, not that Miller did not disclose a truncated wall.

K-TEC further argues that Miller does not anticipate the Disputed Claims because it does

not disclose four side walls in a generally rectangular shape and does not contain a truncated wall. K-TEC also maintains that even if wall 27 of Figure 4 of Miller discloses a truncated wall, wall 27 does not "truncate, in essence, the typical corner" of the blending jar. In support, it points to the March 26, 2009 Office Action, which stated that Vita-Mix's proposed truncated wall "is not consistent with the disclosure of the '117 patent which makes it clear that the four side walls and the truncated wall are four distinct walls." (March 26, 2009 Office Action at 8 (attached as Ex. D to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).) K-TEC also refers to the USPTO August 6, 2009 and February 17, 2010 Office Actions rejecting Vita-Mix's interpretation of Miller as having a truncated wall or a generally rectangular shape.

Because there are conflicting interpretations of what Miller teaches, the court denies summary judgment on whether Miller anticipates the Disputed Claims.

### 2. Ash

Vita-Mix contends that Ash contains every element of claim 9 of the '842 Patent and every limitation except the handle of claim 1 of the '842 Patent and claim four of the '117 patent.[2] Vita-Mix argues that Ash anticipates claim 9 because Ash has four planar side walls, a generally rectangular shape, and a fifth truncated wall positioned closer to the axis than the corners formed by the four side walls that anticipates. Therefore, according to Vita-Mix, Ash anticipates the truncated wall limitation of the Disputed Claims. In support of this contention, Vita-Mix points to the deposition testimony of Tom Dickson, the inventor of the K-TEC Patents; Steve Quist, the senior vice-president of sales and marketing at K-TEC; and Fred Smith, K-

---

[2]Because claim 1 of the '842 Patent and claim four of the '117 Patent do not claim a handle, Ash does not meet the identity requirement for those claims and therefore cannot anticipate them.

TEC's expert, who all testified that Ash has truncated walls. Vita-Mix also cites Dr. Swanger, who states: "There is a fifth truncated wall disposed between two of the four side walls, and the fifth truncated [w]all is positioned closer to the axis than [the] corners formed by the four side walls." (Swanger Rep. ¶ 104 (attached as Ex. ZZ to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).)

K-TEC argues that Ash does not meet the truncated wall limitation because the corner areas of Ash are equally spaced from the central axis and therefore, none of the Ash corners is positioned closer to the axis. It further argues that the alleged truncated wall cannot truncate a typical corner because Ash contains no typical corners.

Because there is an issue of fact about whether Ash discloses every limitation found in claim 9 of the '842 Patent, the court denies summary judgment on anticipation on that claim, but grants K-TEC's motion of no invalidity based on anticipation of claim 4 of the '117 Patent and claim 1 of the '842 Patent.

b. Obviousness

35 U.S.C. § 103(a) codifies the requirement that a patented invention cannot be obvious:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Id. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering "whether two or more pieces of prior art could be combined, or a single piece of prior art could be modified, to produce the claimed invention." Comaper Corp. v. Antec, Inc., 596 F.3d 1343, 1351-52 (Fed. Cir. 2010). In considering whether the prior art

renders the disputed claims obvious, the court should "be aware . . . of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning." KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 421 (2007).

While obviousness under § 103 is a question of law, it is based on four underlying factual inquiries enumerated by the Supreme Court in Graham v. John Deere: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art, and (4) any objective indicia of nonobviousness (also called secondary considerations). Id. at 406 (quoting Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966) (rejecting the Federal Circuit's more formalistic inquiry into obviousness)). "If a person of ordinary skill in the art can implement a predictable variation [on the prior art], and would see the benefit of doing so, § 103 likely bars its patentablility." Id. at 417.

Although expert reports may be instructive in determining whether previous inventions render the patent-in-suit obvious, the report must provide "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." Innogenetics v. Abbott Labs., 512 F.3d 1363, 1373 (Fed. Cir. 2008). In Innogenetics, the Federal Circuit affirmed the exclusion of expert testimony that the disputed patent was obvious because the testimony did not "state how or why a person ordinarily skilled in the art would have found the claims of the [disputed patent] obvious in light of some combination of those references." Id. "'[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'" (Id. quoting In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006).) Similarly, in Motorola, Inc. v. Interdigital Technology Corp., 121 F.3d 1361, 1473 (Fed. Cir. 1997), the court stated, "An expert's conclusory testimony, unsupported by the documentary evidence, cannot

supplant the requirement of anticipatory disclosure in the prior art reference itself." See also KSR 550 U.S. at 418 (quoting above language with approval).

The parties have already agreed that the level of ordinary skill in the pertinent art is a product designer with at least an associate's degree in mechanical engineering technology or the equivalent experience and with two to four years of experience in the design or manufacture of blender jars or equivalent containers. The parties disagree about the three remaining Graham factors: the scope of the prior art, the differences between the prior art and the claims at issue, and the secondary considerations.

### 1. Scope and Content of Prior Art

"The scope of prior art is only that art which is analogous." Teleflex Inc. v. KSR Int'l Co., 298 F.Supp. 2d 581, 587 (E.D. Mich. 2003). Analogous art is art that is not "too remote to be treated as prior art." In re Clay, 966 F.2d 656, 658-59 (Fed. Cir. 1992). "To ascertain the scope of the prior art, a court examines the field of the inventor's endeavor and the particular problem with which the inventor was involved at the time the invention was made." Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH, 139 F.3d 877, 881 (Fed. Cir. 1998). Only if the proposed prior art falls outside the inventor's field of endeavor do the "purposes of both the invention and the prior art [become] important in determining whether the reference is reasonably pertinent to the problem the invention attempts to solve." In re Clay, 966 F.2d 656 (reversing obviousness finding due to reliance on nonanalogous art); see also Comaper Corp. v. Antec, Inc., No. 05-1103, 2008 WL 4140384 (E.D. Pa. Sept. 8, 2008), Teleflex, 298 F.Supp. 2d at 588.

In Comaper, the Federal Circuit held that a party did not offer sufficient evidence to

establish that its proffered prior art was relevant prior art under 35 U.S.C. § 102. Comaper, 2008 WL 4140384 at * 10. The inventor in Comaper sought to solve the problem of heat and dust in computers that lead to their premature failure. Id. at *1. His experimentation revealed that the "drive bay" portion of the computer became the hottest during use. Id. To solve this problem, he invented a cooling device that could slide into a slot in the drive bay. Id. The Federal Circuit rejected the infringing party's assertions that any prior art reference that contained a cooling fan was prior art to the drive bay cooling invention. Id. at *10. Specifically, the Federal Circuit held that patents for computer-related cooling fans that were not designed to cool the drive bay and a patent for an enclosure device that was inserted into the drive bay but not designed to cool it were not in the field of endeavor to the drive bay cooling invention. Id. The court further held that the defendant "did not attempt to offer evidence to establish that the prior art is reasonably pertinent or analogous but [relied] on an assumption of that fact." Id. at *11.

K-TEC refers to a wide range of prior art references that Vita-Mix has, at various points in the litigation, claimed are within the scope and content of the K-TEC Patents.

1. Miller. (Mem. Supp. of K-TEC's Mem. Supp. Summ. J. of No Invalidity on '117 Patent at Ex. C, Docket 465). Miller discloses a smoothie container designed to achieve efficient blending by using a non-symmetrical bottom surface with an off-center blade assembly.

2. Ash. (Id. at Ex. M.) Ash discloses a blender hopper that also serves as a beverage dispenser. The hopper has an upper portion in the shape of a square that transitions to a lower portion in the shape of an octagon and a blade axis equidistant from the eight walls of the octagonal configuration. It is designed to

thoroughly blend liquid and ice to form the slush mixture and maintain the desired consistency of the mixture until it is dispensed.

3. U.S. Design Patent No. D163,117 filed May 1, 1951 (Hobbs). (<u>Id.</u> at Ex. G.) Hobbs discloses an ornamental pitcher. It is a design patent and contains no disclose of the features of the invention, other than three figures.

4. U.S. Design Patent No. D227 filed July 3, 1973 (Grimes). (<u>Id.</u> at Ex. H.) Grimes discloses a pitcher. It is a design patent and contains no disclosure of the features of the invention, other than three figures.

5. U.S. Design Patent No. D187,684 filed April 12, 1960 (Hauser). (<u>Id.</u> at Ex. N.) Hauser discloses a square blender. It is a design patent and contains no disclosure of the features of the invention, other than the figures that show a front and rear perspective view of a blender.

6. U.S. Patent No. 2,794,627 filed June 4, 1957 (Rodwick). (<u>Id.</u> at Ex. O.) Rodwick discloses a simple square blender with curved corner areas.

7. U.S.Patent No. 5,380,086 filed January 10, 1995 (Dickson '086). (<u>Id.</u> at Ex. K.) Dickson '086 discloses an electric food mixing appliance adapted to mix and knead bread dough in combination with a blender device with a special blade configuration that increases the effectiveness of the blender.

8. U.S. Patent No. 5,957,577 filed September 28, 1999 (Dickson '577). (<u>Id.</u> at Ex. L.) Dickson '577 discloses an enclosure for processing devices such as blenders, food processor and mixers. This device reduces noise and increases safety.

9. U.S. Patent No. 2,585,255 filed February 12, 1952 (Kochner). (Mem. Supp. of K-

TEC's Mem. Supp. Summ. J. of No Invalidity of '842 Patent at Ex. P, Docket 465). Kochner discloses a food mixer having a bowl with a wall having a circular bottom portion and an upwardly diverging side wall in the form of an octagon.

10. U.S. Patent No. 2,284,155 filed April 27, 1939 (Landgraf). (Id. at Ex. Q.) Landgraf discloses a food mixer having a bowl with a wall with a circular bottom portion and an upwardly diverging side wall preferably in the form of a hexagon with longitudinal baffles along the interior of the flat sides.

11. U.S. Patent No. 5,639,034 filed June 17, 1997 (Rebordosa). (Id. at Ex. R.) Rebdorosa discloses a working bowl for an electrically powered domestic kitchen appliance with a wall having the form of a substantially regular polygon with at least five and preferably fifteen sides wherein food items are rapidly comminuted.

12. U.S. Patent No. 3,240,246 filed March 15, 1966 (Dewenter). Dewenter discloses a blender.

13. U.S. Design Patent No. 5,219,419 filed June 15, 1993 (Prothe). (Mem. Supp. of K-TEC's Mem. Supp. Summ. J. of No Invalidity on '117 Patent at Ex. I.) Prothe discloses containers for beverages that include a handle, an aperture in the handle, stacking containers and stacking the containers so that the handles are aligned.

14. The K-TEC Square Jar, disclosed in a brochure distributed by K-TEC. (Id. at Ex. J.) The K-TEC Square Jar discloses a blender jar that includes a rectangular opening, four side walls, a handle, a blade, an aperture in the handle, stacking blender jar, and stacking the blending jars such that the handles are aligned. Its purpose is to advertise three of K-TEC's blending products.

15. French Patent 1,137,095 filed November 24, 1955 (David). David discloses a milk pot especially designed to be placed in refrigerated cabinets. (Mem. Opp. K-TEC's Mot. Summ. J., Docket No. 523, at Ex. 13.)

## A. Field of Endeavor

Vita-Mix argues for a broad definition of the field of endeavor to include non-blending jars and bowl-shaped food mixers. But Vita-Mix's definition is too broad. Although "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed," the court considers the field of endeavor narrowly. KSR, 550 U.S. at 420 (holding that the Federal Circuit erred in holding that patent examiners and courts should look only to the problem the patentee was trying to solve). For instance, in Clay, the Federal Circuit held that an invention relating to the extraction of crude petroleum was not in the same field of endeavor as an invention relating to the storage of refined petroleum. Clay, 966 F.2d at 659. Similarly, in Comaper, the court excluded computer cooling fans not specifically designed to cool the drive bay and cases designed to fit in the drive bay but not to cool it. Comaper, 2008 WL 4140384 at * 10.

In this case, Mr. Dickson's field of endeavor in designing the K-TEC Patents was high-performance blending containers. The K-TEC Patents discuss blending performance, speed, and cavitation reduction. The '117 Patent further addresses blending jar stackability while the '842 Patent addresses uniform consistency of blended liquids. Mr. Dickson, submitted a declaration asserting that he sought to create a blending jar for smoothies as well as detailing several specific problems that he sought to solve. (Dickson Aff. (attached as Ex. W to Mem. in Supp. of Summ. J. No Invalidity '842 Patent, Dkt. No. 469).) While non-blending containers and food mixers

may be reasonably pertinent to the problem Mr. Dickson sought to solve, as discussed below, they were not within the field of his endeavor. Therefore, only the proffered prior art within the field of blending containers is properly considered within the field of endeavor to the K-TEC Patents. This includes Miller, Ash, Hauser, Rodwick, Dickson '086, Kochner, Landgraf, Dewenter, and the K-TEC Square Jar. The remaining prior art references are only appropriate if they are reasonably pertinent to the problem the inventor sought to solve.

### B.    Reasonably Pertinent

A prior art reference outside the inventor's field of endeavor is reasonably pertinent if "it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." Clay, 966 F.2d at 659. Accordingly, the court must first consider the problem that Mr. Dickson sought to solve and then consider whether the prior art outside the field of endeavor is reasonably pertinent to solving this problem. Id.

Vita-Mix argues that non-blending containers are reasonably pertinent because Mr. Dickson had many goals in addition to improving blending performance. For instance, Mr. Dickson testified in his deposition that one of his goals was to fit the new blending container into K-TEC's quiet box. (Dickson Dep. at 146-152 (attached as Ex. 6 to Mem. Opp. K-TEC's Mot. Summ. J. No Invalidity '842 Patent, Dkt. No. 523).) In addition, the '117 Patent mentions jar stackability as a problem that Mr. Dickson had to consider when he invented the blending container. Vita-Mix cites several USPTO Office Actions concerning the K-TEC Patents, including the March 29, 2009 office action and the August 6, 2009 office action, where the USPTO considered Grimes, Hobbs, and Prothe as prior art without a discussion of their reasonable pertinence to the inventor's field of endeavor.

Finally, Vita-Mix relies on the expert testimony of Dr. Swanger to show that it would be obvious to one skilled in the art to combine non-blending container designs with a blender, and therefore that the non-blending containers must be reasonably pertinent. Vita-Mix repeatedly points to paragraphs 130-131 of Dr. Swanger's initial expert report to support this contention. In these paragraphs Dr. Swanger claims that the Disputed Claims would be obvious to one of ordinary skill in the art. (Swanger Rep. ¶¶ 130-131 (attached as Ex. ZZ to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).) He "base[s] [that claim] on the common knowledge of those of ordinary skill in the art that handles on blenders were commonplace at the time of the invention . . . .," and that "[i]t would also have been obvious . . . to select a blending jar with a square cross-section and opening and a tapered configuration, since these were also commonplace . . . ." Id. ¶ 131. But Dr. Swanger's report provides no discussion to back his conclusory statements. He is silent on the question of why Mr. Dickson would have looked to non-blending containers to discover these commonplace designs. Further, Dr. Swanger's expert report only addresses a very limited number of prior art references.[3] He asserts that the Disputed Claims are obvious based on the already-rejected "Miller Invention," a combination of the Miller Patent and the K-TEC Square Jar, and a combination of Ash, Hobbs, and the K-TEC Stackable Jar. Id. ¶¶ 33, 36, 56-57, 65, 83, 88, 102, 105.

The court finds that this expert report does not explain any rational underpinning for Mr. Dickson to have consulted non-blending containers or food mixers in order to solve the problems he encountered in designing a new blending container. Rather, it merely relies on assumption

---

[3] Dr. Swanger states, "[f]or all the above claims where I find the claim obvious, other prior art (other than Hobbs) may be substituted for Hobbs and I would still conclude that the claims are obvious." (Swanger ¶¶ 55, 72.)

without explanation that the prior art references would be reasonably pertinent to Mr. Dickson's field of endeavor. See Comaper, 2008 WL 4140384 at *11. Accordingly, Hobbs, Grimes, Dickson '577, Rebordosa, Prothe, and David are not reasonably pertinent to the K-TEC Patents and are not properly within the scope and content of the prior art.

2. Differences Between the Prior Art and the Claimed Invention

In analyzing the differences between the prior art and the claimed invention, the court should consider "any differences between the teachings found in the prior art and the claimed invention, from the vantage point of a hypothetical person with ordinary skill in the art." Teleflex, Inc. v. KSR, Int'l, 298 F.Supp. 2d 581, 591 (E.D. Mich. 2003). The claimed invention should be construed as a whole, although limitations found only in the specification should not be added to the claims. Id. Even if all of the claims in the claimed invention are present in the prior art, the claimed invention is not obvious "unless there is some motivation or suggestion to combine the prior art teachings, either in the prior art itself or by reasonable inference from the nature of the problem, or from the knowledge of those of ordinary skill in the art." Id. at 593 (internal quotations omitted). Although the Supreme Court has rejected a rigid test of obviousness, the Court noted that "it can be important to identify a reason that would have that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." KSR Int'l Co. v. Teleflex, Inc. 550 U.S. 398, 418 (2007) (affirming Teleflex, 298 F.Supp. 2d 581). The Supreme Court explained that when making a determination of whether the inventor would be motivated to combine elements from prior art references, a court must

look to interrelated teachings of multiple patents; the effects of demands known to

19

the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue. To facilitate review, this analysis must be made explicit.

Id. at 419. Significantly, "[t]he incentive to combine prior art references can come from the prior art itself or be reasonably inferred from the nature of the problem to be solved, leading inventors to look to references related to solutions to that problem." Teleflex, 298 F.Supp. 2d at 594. What a prior art references discloses is a factual question. In re Clay, 966 F.2d 656, 658 (Fed. Cir. 1992).

As discussed above, Miller, Ash, Hauser, Rodwick, Dickson '086, Kochner, Landgraf, Dewenter, and the K-TEC Square Jar fall within the scope of the prior art. Of this prior art, Vita-Mix's expert Dr. Swanger has addressed only Miller, Ash, and the K-TEC Stackable Jar. Although the incentive to combine may be inferred from the nature of the problem, the expert still must state the rational underpinning of his conclusion that one skilled in the art would be motivated to combine prior art references. Innogenetics, 512 F.3d at 1373. Because Dr. Swanger did not provide such explanation concerning Hauser, Rodwick, Dickson '086, Kochner, Landgraf, and Dewenter, the court will not consider the differences between these prior art references and the Disputed Claims.

Vita-Mix argues that the Disputed Claims are obvious based on Miller alone, and that claim 1 of '842 and claim 4 of '117 are obvious based on Miller or Ash in view of the K-TEC Square Jar. K-TEC responds that neither Miller nor Ash disclose a truncated wall. But, as discussed in the anticipation section above, there is a factual dispute about whether Miller or Ash disclose a truncated wall. If the jury determines that Miller discloses a truncated wall, there is

then a factual issue about whether it would be obvious to one skilled in the art to add a generally rectangular shape to the teachings of the Miller Patent, either through the common knowledge of one skilled in the art or by combining Miller with the K-TEC Stackable Jar. Similarly, if the jury determines that Ash discloses a truncated wall, there is a factual issue about whether it would be obvious to add a handle and a generally rectangular shape to Ash's teachings.

3. Secondary Considerations

K-TEC has submitted a significant amount of evidence on secondary considerations that it contends proves that its patents are not obvious. "Relevant secondary considerations include: commercial success, long-felt but unsolved needs, failure of others, and the presence of a motivation to combine, or avoid combining, prior art teachings." Power-One v. Artesyn Techs., Inc., 599 F.3d 1343, 1351 (Fed. Cir. 2010). Secondary considerations are important to prevent the court from engaging in improper hindsight when evaluating obviousness. Crocs, Inc. v. ITC, 598 F.3d 1294, 1310 (Fed. Cir. 2010). Although these considerations are secondary to the comparison of the claims made in the patent-in-suit with the teachings of the prior art and cannot overcome a strong prima facie case of obviousness, they often constitute the most probative and cogent evidence of nonobviousness in the record. Id. The patentee, K-TEC, has the burden to submit proof of a clear nexus between the alleged secondary consideration and the claimed invention. Demaco Corp. v. F. Von Langsdorff Licensing, Ltd., 851 F.2d 1387, 1392 (Fed. Cir. 1988). K-TEC has submitted evidence of unexpected results, long-felt need and earlier failures, and copying.

A.    Unexpected Results

K-TEC submitted the affidavits of Mr. Dickson and Richard C. Galbraith, executive vice-

president of K-TEC. Their testimony in these affidavits details the unexpected results that came

from the truncated wall in the blending jar apparatus that Mr. Dickson invented in the spring of

2001. Mr. Dickson detailed his efforts that culminated in the blending jar invention that was

later the subject the '117 Patent:

> In the spring of 2001, I began creating a blending jar that I hoped would reduce or prevent cavitation when blending frozen drinks commonly called smoothies. Cavitation occurs when the smoothie ingredients in the blending jar form a bridge of sorts over the blending blade such that the blade is no longer mixing the ingredients. Cavitation has been a problem in the blending industry for many years.

(Dickson Aff. ¶ 3 (attached as Ex. W to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No.

465).)

After describing how he constructed the new jar, Mr. Dickson continued:

> In-house testing revealed that this new "5-sided" jar did in fact prevent cavitation. (I call it a 5-sided jar due to the addition of the fifth truncated wall.) The way in which it occurred, however, was not expected. The flow of the ingredients being blended demonstrated that the addition of the fifth truncated wall shifted the blending vortex off center from the blade axis, causing the ingredients to rise higher on one side of the jar than the other. This shift in the blending vortex was surprising and unexpected . . . .

(Id. ¶ 5.) Mr. Dickson further explained

> The design of K-TEC's 5-sided jar was not intuitive nor obvious to me at the time I created it. I was simply trying to make the base of the jar wide in the hopes of reducing cavitation problems and unexpectedly discovered that the shifting of the vortex by the fifth truncated wall created a more viscous blending pattern that dramatically increased blending efficiency.

(Id. ¶ 15.) Mr. Galbraith also testified that not only did the new jar eliminate cavitation but "[i]t

unexpectedly shortened the blending time for some difficult-to-make smoothies by about two-

thirds or more." (Galbraith Aff. ¶ 6 (attached as Ex. X to Mem. Summ. J. No Invalidity '117

Patent, Dkt. No. 465).)

## B. Long-Felt Need and Earlier Failures

K-TEC also presented evidence that reduction in cavitation was a long-felt need in the commercial blending world and that earlier efforts to reduce cavitation had failed. Vita-Mix's Director of Sales and Marketing, Scott Hinckley, testified that he had received complaints from Vita-Mix's customers about cavitation and poor processing problems with Vita-Mix's blending containers from the time Vita-Mix first entered the commercial blending market in 1991. (Hinckley Dep. 44, April 20, 2007 (attached as Ex. Q to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).) Mr. Hinckley explained that as a result of customer complaints about cavitation he had for years "been asking [Vita-Mix's engineering department] for a container that would process smoothies better." (Id. at 92.)

David Kolar, a senior engineer for product development at Vita-Mix, also testified that Vita-Mix had received complaints complain about cavitation. (Kolar Dep. 96-97, April 18, 2007 (attached as Ex. R to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).) He testified that he had been working on the problems of "freeze up and poor processing" of blended drinks since he began work at Vita-Mix in 1998. (Id. at 115.)

Brent Miller, a former Vita-Mix employee and one of the inventors of the Miller patent, described how shortly after he began working for Vita-Mix in 1997, Mr. Hinckley would bring vendors and customers to the engineering area to demonstrate Vita-Mix's commercial blending equipment. Mr. Miller stated that he "saw the products fail to complete the test, it wouldn't blend things." (Miller Dep. 21- 25, December 8, 2009 (attached as Ex. S to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).)

In an email, Scott Hinckley detailed K-TEC's efforts to persuade one of Vita-Mix's customers, Caribou Coffee, to change from the Vita-Mix container to the new K-TEC container. Mr. Hinckley wrote, "Caribou Coffee called. They absolutely LOVE the new [K-TEC] container." Mr. Hinckley continued, "I am sure this is just the start. I'm sure [K-TEC] is going to every account and showing them this container, which blows ours away." (Hinckley May 10, 2002 Email (attached as Ex. BB to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).)

C. Copying

K-TEC contends that emails from John Barnard, Vita-Mix's president, to Vita-Mix engineers demonstrate that Vita-Mix copied the invention of the soon-to-be patented K-TEC containers. In one email, Mr. Barnard wrote, "We might be better off to make a container very similar to K-TEC, as Hamilton Beach has done." (Barnard Aug. 2, 2000 Email (attached as Ex. U to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).) In another email Mr. Barnard discussed the design of the K-TEC container. He then wrote, "Hopefully, you will be able to find exactly what [K-TEC is] doing, and find enough potential liabilities in the process to slow them down. If the concept has real processing merits, then we may want to pursue a similar project, with solid equipment behind it." (Barnard January 23, 2002 Email (attached as Ex. Z to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).)

K-TEC also points to minutes of a Vita-Mix engineering staff meeting as evidence that Vita-Mix was aware that its container was a copy of the K-TEC invention. The first item on the minutes reads: "[K-TEC] paid the filing fee on their patent, so Vita-Mix Corporation has two months to make changes to the XP containers and avoid infringement on the container." (October 2, 2005 Engineering Staff Meeting Minutes (attached as Ex. MM to Mem. Summ. J. No

Invalidity '117 Patent, Dkt. No. 465).)  Jon Katz, Vita-Mix's director of engineering in 2005,

also testified that he believed that Vita-Mix's first jar was a copy of K-TEC's invention.  (See

Katz Dep. at 42 (attached as Ex. PP to Mem. Summ. J. No Invalidity '117 Patent, Dkt. No. 465).)

Further, the court has already found in its Infringement Order that Vita-Mix copied the K-TEC

Patents.

K-TEC may submit its evidence of unexpected results, long-felt need and earlier failures,

and copying to the jury as evidence that the Disputed Claims are not obvious.

## CONCLUSION

The court GRANTS in part and DENIES in part K-TEC's Motion for Summary Judgment

of No Invalidity Based on Anticipation or Obviousness of Claim 4 of U.S. Patent No. 6,979,117

(Dkt. No. 464) and K-TEC's Motion for Summary Judgment of No Invalidity Based on

Anticipation or Obviousness of Claims 1 and 9 of U.S. Patent 7,281,842 (Dkt. No. 468.)  The

court grants summary judgment for K-TEC on no invalidity of the K-TEC Patents based on

Hobbs, Grimes, Dickson '577, Rebordosa, Prothe, and David because these prior art references

are not within the scope and content of prior art.  The court further grants summary judgment for

K-TEC on no invalidity of the K-TEC Patents based on Hauser, Rodwick, Dickson '086,

Kochner, Landgraf, and Dewenter because Vita-Mix did not support their arguments on these

prior art references with evidence.  On K-TEC's anticipation argument, the court also grants

summary judgment of no invalidity based on Ash's anticipation of claim 4 of the '117 Patent and

claim 1 of the '842 Patent.  But issues of fact remain on whether Miller anticipates the Disputed

Claims, whether Ash anticipates claim 9 of the '842 Patents, and whether Miller, Ash, and the K-

TEC Stackable Jar combine to render the Disputed Claims obvious.

Because of the same factual issues, the court DENIES Vita-Mix's Motion for Summary

Judgment of Invalidity of U.S. Patent Nos. 6,979,117 and 7,281,842 (Dkt. No. 475).



DATED this___26___day of May, 2010.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge