**L. Grant Foster, 7202**
gfoster@hollandhart.com
**Brett L. Foster, 6089**
bfoster@hollandhart.com
**Mark A. Miller, 9563**
mamiller@hollandhart.com
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700

*Attorneys for Plaintiff*
K-TEC, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **K-TEC, INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**VITA-MIX CORP.**, an Ohio corporation,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION**<br><br>Civil Case No. 2:06-CV-108<br><br>Chief Judge Tena Campbell<br>Magistrate Judge Paul M. Warner |

Plaintiff K-TEC, Inc. ("K-TEC") presents the following memorandum in support of its Motion for a Permanent Injunction to preclude continuing infringement by Defendant Vita-Mix Corporation ("Vita-Mix").

K-TEC seeks a permanent injunction against Vita-Mix, enjoining it from making, using, selling or offering to sale any products that infringe claim 4 of the '117 patent[1] or claims 1 and 9 of the '842 patent,[2] including but not limited to the Vita-Mix MP container (Ex. 3), the Vita-Mix XP container (Ex. 4) and any colorable imitations thereof.  An injunction is warranted under 35 U.S.C. § 283 if a plaintiff shows that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, the balance favors the plaintiff and an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *eBay, Inc. v. Merc Exchange LLC*, 547 U.S. 388, 391 (2006); *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327 (Fed. Cir. 2008).  The decision whether to grant injunctive relief "rests within the equitable discretion of the district courts."  *eBay*, 547 U.S. at 394.  In this case, K-TEC has clearly demonstrated it is entitled to a permanent injunction.

## I.     K-TEC HAS SUFFERED AN IRREPARABLE INJURY

It is proper for a district court to consider evidence of past harm to K-TEC.  "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee *has suffered* an irreparable injury."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (emphasis original and quoting *eBay*).  In addition, "direct competition in the marketplace weighs heavily in favor of a finding of irreparable injury."  *i4i Ltd. P'ship v. Microsoft Corp.,* 670 F.Supp.2d 568, 599 (E.D. Tex. 2009), a*ff'd.* 598 F.3d at 831.

---

[1] U.S. Patent No. 6,979,117.

[2] U.S. Patent No. 7,281,842.

The evidence in this case overwhelming shows that K-TEC has been irreparably harmed by Vita-Mix's willful infringement.  First, it is undisputed that K-TEC and Vita-Mix are direct competitors in the commercial blending industry and particularly with respect to the blending systems at issue in this case.  The CEOs (Tom Dickson for K-TEC and John Barnard for Vita-Mix) and marketing executives (George Wright for K-TEC and Tony Ciepiel and Scott Hinckley for Vita-Mix) from both companies uniformly testified concerning their direct competition with each other.  *See* Trial Transcript at 468:8-12, 542:16-18, 687:18 – 688:20, 695:14 – 698:4, 876:8-17, 887:11-24, 1101:5-10, 1114:6-23, 1572:24 – 1573:3, 1588:16-18; Scott Hinckley Deposition Tr. at 24:10-13, 26:16-19.

As a consequence of the direct competition between K-TEC and Vita-Mix, K-TEC was wrongly deprived of a significant amount of market share it would have acquired but for Vita-Mix's infringement.  The evidence at trial convincingly demonstrated demand for K-TEC's 5-sided jar blending systems from large, multi-million dollar customers such as Baskin Robbins, Caribou Coffee, Tropical Smoothie, and Ruby Tuesday's/Coke.  *See, e.g.,* Trial Exs. 29-30, 63-64, 163, 171.  Vita-Mix copied K-TEC jar in order to keep and increase its market share.  *Id.*  Those sales and customer accounts should have belonged solely to K-TEC, the patent owner, who has the statutory right to exclude others from making, using, selling or offering to sale the highly demanded patented invention.

K-TEC's damages expert, Lance Gunderson, provided the following graphical depiction at trial of the lost sales and market share K-TEC suffered as a result of Vita-Mix's infringement.



The directly competitive posture and loss of market share alone show irreparable harm to justify a permanent injunction. *See i4i*, 598 F.3d at 862 (Microsoft's infringement caused "i4i to lose market share" and thus "irreparably injured i4i"); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F.Supp.2d at 393 (where there was "direct competition in the marketplace" between the parties, and the plaintiff "previously lost significant market share based on the sale of infringing products" plaintiff established irreparable injury); *Finjan Software, Ltd. v. Secure Computing Corp.*, 2009 WL 2524495 (D. Del. 2009) (where the parties were "direct competitors" and there was "both testimonial and documentary evidence in the record in this case confirming that [the parties] compete for many of the same target customers," and there was thus evidence of a loss of "market share," the plaintiff "has suffered irreparable harm").

In this case, there is additional evidence of irreparable harm. K-TEC's Vice President of Sales and Marketing testified about the unquantifiable price erosion and brand dilution resulting from Vita-Mix copying the patented jar design and forcing K-TEC to compete with its own breakthrough technology. *See* Trial Transcript at 698:5 – 700:2, 701:3 – 710:23. Specifically, Vita-Mix's wrongful use of K-TEC's jar design forced K-TEC to lower its prices (as the competing technology was now identical) and allowed Vita-Mix to increase the value of its brand while K-TEC was largely deprived of the chance to build its reputation as an innovator and thereby grow the recognition and value of its brand. *Id*. *See also* Declaration of George Wright at ¶¶ 8-13 (Dkt. No. 272). Lance Gunderson also determined that there was price erosion and brand dilution in this case that could not be quantified. *See* Gunderson Report at 25-28 (Dkt. No. 526, Exhibit 1). The loss of "brand recognition" is the "type of injury that is both incalculable and irreparable." *i4i*, 670 F.Supp.2d at 600.

Permitting Vita-Mix to continue making and selling the MP container, the XP container or any colorable imitation thereof is antithetical to the patent laws and will continue to irreparably harm K-TEC.

## II.   MONEY DAMAGES ARE INADEQUATE TO COMPENSATE FOR VITA-MIX'S CONTINUED INFRINGEMENT

Although the jury awarded K-TEC monetary damages corresponding exactly to Mr. Gunderson's 53% lost profits / 47% royalty calculation, legal remedies are not adequate to compensate K-TEC for Vita-Mix's ongoing infringement. "The statutory right to exclude represents a tangential benefit associated with patent rights that cannot be quantified in money

damages." *Finjan Software,* 2009 WL 2524495 at *11.[3] Where Vita-Mix is a direct competitor in the blending market, K-TEC has a right to exclude this rival from using its own proprietary technology against it in the marketplace. *Id.*[4]

Before and after Vita-Mix began infringing, K-TEC sold the same patented five-sided jar. *i4i*, 598 F.3d at 862 ("before and after Microsoft began infringing, i4i produced and sold software that practiced the patented method"). K-TEC does not license its patents, but instead has a company policy not to license its patents and to preserve its exclusive rights to its innovative technology. *See* Trial Transcript at 927:14-23. When a company is practicing its patent "only to suffer a loss of market share, brand recognition and customer goodwill as a result of the defendant's infringing acts," the "loss associated with these effects is particularly difficult to quantify." *i4i*, 598 F.3d at 862. The inability to calculate this is further enhanced by the fact that there are "sticky customers" – once the initial sale is made, the substantial investment in the blending equipment, which can often times be a multi million dollar investment,[5] results in long term customer loyalty due to that investment. *Mass Engineered Design*, 633 F.Supp.2d at 393-94.[6] K-TEC's lost business opportunities resulting from Vita-Mix's infringement are real and significant, but are impossible to quantify. *See* Quist Declaration at ¶¶ 11-23 (Dkt. No. 267). Simply put, "the continuing loss of market share, customer goodwill and brand recognition

---

[3] Quoting *Fisher Price, Inc. v. Safety1st, Inc.*, 279 F.Supp.2d 526, 528 (D. Del. 2003).

[4] Quoting *Novozymes A/S v. Genecor Intern., Inc.*, 474 F.Supp.2d 592, 613 (D. Del. 2007).

[5] *See, e.g.,* Trial Exs. 29, 30.

[6] Citing *TiVo v. EchoStar Comm. Corp.*, 446 F.Supp.2d 664, 669 (E.D. Tex. 2006), *rev'd on other grounds*, 516 F.3d 1290 (Fed. Cir. 2008) (explaining that so called "sticky customers" continually shape the market to the patentee's disadvantage).

within that market are the type of losses that monetary damages are insufficient to cure." *i4i*, 760 F.Supp.2d at 600.[7]

### III.   THE BALANCE OF HARDSHIPS TIPS SHARPLY IN FAVOR OF K-TEC

The sale of blending equipment represents the majority of K-TEC's sales, and sales of the patented high-end, five-sided jar blending systems are a very significant component of its blending equipment sales and the establishment of the value of the Blendtec brand.  K-TEC's sales of five-sided jar blending systems leveled off and indeed began to decline immediately after Vita-Mix launched the MP container.  Vita-Mix's sales continued to increase at a rate that would have approximated K-TEC's sales but for Vita-Mix's infringement.  *See* Graph on page 3, *supra*.  Ongoing infringement by Vita-Mix would continue to have a devastating impact on K-TEC and continue to cause irreparable harm for which there is no monetary remedy.

On the other hand, Vita-Mix cannot claim today that a permanent injunction would have a meaningful effect on its business.  At the time K-TEC moved for a preliminary injunction in 2008, John Barnard testified as follows:

> 9.   If the Court were to enjoin Vita-Mix as K-TEC requests herein, Vita-Mix would suffer substantial harm to its business.  **A significant part of Vita-Mix's business is related to products that are designed to use the blender jar at issue in this case**.  These products that incorporate the accused blender jar totaled approximately $10,440,000 in sales for 2007, representing approximately 10.7% of total 2007 sales for the company.  Vita-Mix's blender jar is higher priced than K-TEC's competing product.
>
> 10.   Moreover, if the Court were to enjoin Vita-Mix as requested by K-TEC herein, **Vita-Mix would be substantially**

---

[7] Citing *z4 Techs., Inc. v. Microsoft Corp.*, 434 F.Supp.2d 437, 440 (E.D. Tex. 2006).

> **harmed through lost orders and sales**, which could significantly reduce hours of work for employees working for the company.
>
> 11.   **Further substantial harm to Vita-Mix would result through damage to or loss of its customer relationships and erosion of its market share**.  Additional significant harm would be caused to customers because they would not have access to replacement containers or warranty repairs if Vita-Mix were preliminarily enjoined.  Customer's businesses would be disrupted because they would not have access to the containers that are consistent throughout the rest of their stores and provide a consistent blending offering.  Finally, a preliminary injunction would significantly harm Vita-Mix's goodwill, which Vita-Mix has spent millions of dollars and decades to establish.

Declaration of John K. Barnard (Dkt. No. 217-5).

Vita-Mix has now changed its tune.  Following the jury's verdict, Vita-Mix issued a press release indicating (1) it has "made the decision to eliminate the XP container from our product line" calling it "old technology" and (2) the litigation "impacts a small part of the commercial side of our business."  *See* Vita-Mix press release attached as Exhibit A.  Accordingly, the hardship on Vita-Mix will admittedly "be negligible considering their established place in the market and their purported intentions to discontinue all infringing products."  *Mass Engineered Design*, 633 F.Supp.2d at 394.[8]  Clearly, the balance of hardship tips sharply in favor of K-TEC and in favor of a permanent injunction.

Vita-Mix may argue hardship in regard to the expenses it incurred in creating the infringing products or in the cost of the redesign.  However, such arguments have no traction in the law.  "Neither commercial success, nor sunk development costs, shield an infringer from

---

[8] Of course, the fact that Vita-Mix *claims* that it has discontinued the XP container does not mean that it in fact has done so.  Vita-Mix made the same assertion at trial as to the MP container and, as the Court is aware, the jury not only found that Vita-Mix continued to infringe by making, using, selling or offering for sale the MP container, but
*(Footnote continued)*

injunctive relief. . . . [The defendant] is not entitled to continue infringing simply because it successfully exploited its infringement." *i4i*, 598 F.3d at 863.[9]

## IV. A PERMANENT INJUNCTION SUPPORTS THE PUBLIC'S INTEREST IN ENFORCEMENT OF PATENT RIGHTS

The final factor also weighs in favor of granting permanent injunctive relief. Courts recognize the "strong public policy favoring enforcement of patent rights." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1998). Where the parties are direct competitors, compete for most if not all of the same customers, and Vita-Mix has unlawfully hijacked not only the patent rights, but the goodwill associated with its breakthrough technology for a period of more than 4 1/2 years, these public policy interests are compelling. There has been no showing that the public will be negatively impacted if Vita-Mix is not permitted to continue to sell its infringing products.

Public interest usually favors the patentee, with rare exceptions, such as when an infringer's product is necessary to protect public health, national security, or other critical public interests. *See, e.g., Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995). While commercial blending products are important and valuable, they are not of serious importance to the public's health, welfare or safety sufficient to override the strong public policy favoring enforcement of patent rights. *See Judkins*, 2010 WL 1292158 at 10 ("window blinds are not of serious importance to the public's health, welfare or safety" and therefore a permanent injunction should issue); *Finjan Software,* 2009 WL 2524495 at 11-12; *TiVo, Inc. v. EchoStar*

---

found that infringement to be *willful*. Accordingly, the fact that Vita-Mix "purports to discontinue all infringing products," *Mass Engineered Design, supra*, does not negate the need for a permanent injunction.

[9] Citing *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008), *Windsurfing Int'l v. AMF, Inc.*, 782 F.2d 999, 1003 n.12 (Fed. Cir. 1986).

*Comm. Corp.*, No. 2:04-CV-1-DF, Slip Op. at 12 (E.D. Tex. August 17, 2006) ("The public has an interest in maintaining a strong patent system.  This interest is served by enforcing an adequate remedy for patent infringement – in this case, a permanent injunction.  The infringing products are not related to any issue of public health or any other equally key interest").  The public interest here cuts heavily in favor of K-TEC, and there are not any countervailing interests that would override it.  Therefore, this factor weighs in favor of entry of a permanent injunction.

Upon consideration of each of the four factors as applied to the facts and circumstances of this case, the equities strongly weigh in favor of granting K-TEC's Motion for a Permanent Injunction against Vita-Mix's continued infringement of claim 4 of the '117 patent and claims 1 and 9 of the '842 patent.  The form of an appropriate permanent injunction is attached as Exhibit A to the present Motion.

Dated this 16th day of July, 2010.

HOLLAND & HART LLP

/s/ Brett L. Foster
L. Grant Foster
Brett L. Foster
Mark A. Miller

*Attorneys for Plaintiff*
K-TEC, Inc.

9