**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| K-TEC, a Utah corporation,<br><br>    Plaintiff,<br><br> v.<br><br>VITA-MIX, an Ohio corporation,<br><br>    Defendant. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 2:06-cv-00108-TC<br><br>Judge Tena Campbell |

   K-TEC sued Vita-Mix for infringing its patents on a high-performance blending jar. Vita-Mix raised a number of defenses to K-TEC's claims, including the defense that K-TEC's patents were invalid. After a ten-day jury trial, the jury found that K-TEC's patents were valid and that Vita-Mix had willfully infringed K-TEC's patents. The jury awarded K-TEC $8,942,123 in lost profits and $2,066,185 as a reasonable royalty.

   Vita-Mix now moves under Rules 50 and 59 of the Federal Rules of Civil Procedure for judgment as a matter of law in its favor, or alternatively a new trial, on the grounds that the Vita-Mix MP container did not infringe K-TEC's patents (Dkt. No. 831), that K-TEC's patents were invalid because they were anticipated in the prior art (Dkt. No. 835), that K-TEC's patents were invalid because the prior art rendered them obvious (Dkt. No. 837), and that Vita-Mix did not willfully infringe the K-TEC patents (Dkt. No. 841). Vita-Mix also asks the court to remit the damages award Vita-Mix (Dkt. No. 839) and to strike the expert testimony of Fred Smith on the grounds that it was "scripted" (Dkt. No. 833). K-TEC moves for enhanced damages and attorney fees (Dkt. No. 784) and to alter the judgement to include taxable costs, post-verdict damages to judgment, pre-judgment interest, and post-judgment interest (Dkt. No. 787). K-TEC also asks

the court for a permanent injunction (Dkt. No. 791).

Because the court concludes that the jury's verdict was supported by the evidence, the court denies Vita-Mix's motions. The court grants in part and denies in part K-TEC's motions to amend judgment and grants K-TEC's motion for permanent injunction.

ANALYSIS[1]

<u>Vita-Mix's Motions for Judgment as a Matter of Law</u>

"Judgment as a matter of law is appropriate only when the evidence presented at trial does not permit a reasonable jury to find for the non-movant." <u>Manzanares v. Higdon</u>, 575 F.3d 1135, 1142 (10th Cir. 2009); <u>see also</u> Fed. R. Civ. P. 50(b). "Such a judgment is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." <u>Snyder v. City of Moab</u>, 354 F.3d 1179, 1184 (10th Cir. 2003). The court considers the evidence in the light most favorable to the non-moving party. <u>United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.</u>, 210 F.3d 1207, 1227 (10th Cir. 2000) (quotation omitted). Similarly, "[w]here a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." <u>Snyder v. City of Moab</u>, 354 F.3d 1179, 1187 (10th Cir. 2003) (quotation omitted).

<u>Non-Infringement by the MP Container</u> (Dkt. No. 831)

Vita-Mix seeks to overturn the jury verdict finding that the MP Container infringed the '117 Patent. Vita-Mix argues that K-TEC did not put forth evidence of any sale of the MP

---

[1]The factual and procedural backgrounds of this case have been discussed in the many earlier orders of this court. The court will not repeat them except to explain its decisions here.

Container after the '117 Patent issued.  K-TEC responds by pointing to the following evidence that supports the jury's verdict: Vita-Mix used the same product numbers and descriptions for the XP and MP Containers because Vita-Mix wanted the change between the two containers to be "invisible" which made knowing which container was sold at what time  impossible; purchase orders from September 2006 that listed the MP Container as the item purchased; Richard Galbraith testified that after the '117 Patent issued, he attempted to order the XP Container and instead received the MP Container.  This evidence was sufficient to support the jury's verdict.

Anticipation (Dkt. No. 835)

Vita-Mix moved for judgment as a matter of law that the three asserted claims of the K-TEC Patents are invalid as anticipated.  A patent is invalid as anticipated under 35 U.S.C. § 102 if a single prior art reference discloses every claim limitation.  C.R. Bard, Inc. v. 3M Sys., Inc., 157 F.3d 1340, 1349 (Fed. Cir. 1998).

At trial, Vita-Mix argued that U.S. Patent No. 6,431,755 to Ash (Ash) disclosed the truncated wall and U.S. Patent No. 7,063, 456 to Miller (Miller) disclosed the truncated wall and generally rectangular shape later disclosed by the K-TEC patents.  In support of this theory, Vita-Mix put on evidence that Tom Dickson identified the Ash wall as "truncated" in his deposition testimony and that former Vita-Mix engineer and Miller patent holder Brent Miller believed the truncated wall was known in the art and specifically disclosed in Ash and Miller.  Vita-Mix also put on expert testimony by Dr. Lee Swanger, who testified that Ash discloses every element of claim 9 of the '842 patent and that Miller discloses every element of the asserted claims.

But Tom Dickson explained that when he identified the truncated wall in Ash, he did not mean that the wall was the same as the truncated wall described in the K-TEC patents and

defined by the court in its claim construction order.  In addition, K-TEC's witness,  Fred Smith, testified that Ash and Miller do not disclose the fifth truncated wall.

Considering this evidence in the light most favorable to the jury verdict, the court concludes that there is ample basis in the record to support the jury's  finding that the K-TEC patents were not anticipated.  Accordingly, there is no basis for the court to grant judgment as a matter of law or a new trial on the issue of anticipation.

Vita-Mix also argues, again, that the court's earlier ruling excluding the voluminous notes taken by Mr. Miller when he worked at Vita-Mix was  error and that the notes would have shown conclusively that Miller anticipated the K-TEC patents.  The court has fully explained its reasons for its earlier ruling and will not repeat them here.

Obviousness  (Dkt. No. 837)

Vita-Mix contends that the K-TEC patents are invalid as obvious.  Also, Vita-Mix  argues that the court should not have allowed the jury to hear K-TEC's evidence of secondary considerations because Vita-Mix made a strong prima facie case of obviousness.

A patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  While obviousness under § 103 is a question of law, it is based on four underlying factual inquiries enumerated by the Supreme Court in Graham v. John Deere: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art, and (4) any objective indicia of nonobviousness (also called secondary considerations).  Id. at 406 (quoting Graham v. John

Deere Co., 383 U.S. 1, 17-18 (1966) (rejecting the Federal Circuit's more formalistic inquiry into obviousness)).  "If a person of ordinary skill in the art can implement a predictable variation [on the prior art], and would see the benefit of doing so, § 103 likely bars its patentablility."  Id. at 417.  The fourth Graham factor directs the court to take into account relevant secondary considerations, including "commercial success, long-felt but unsolved needs, failure of others, and the presence of a motivation to combine, or avoid combining, prior art teachings."  Power-One v. Artesyn Techs., Inc., 599 F.3d 1343, 1351 (Fed. Cir. 2010).

On motion for summary judgment, the court narrowed the prior art relevant to the obviousness question to Ash, Miller, and the K-TEC Square Jar, which was a four-sided jar with a handle featured prominently in K-TEC's advertising materials.  The court determined that if Ash or Miller disclosed the truncated wall described in the K-TEC patents, there would be a question about whether combining the truncated wall with the K-TEC Square Jar was obvious.

As discussed above, K-TEC put forth ample evidence at trial for the jury to find that Miller and Ash did not disclose the truncated wall limitation.  K-TEC also submitted evidence of secondary considerations.  Tom Dickson, Shawn Elgaaen, and Scott Hinckley testified about a long-felt need in the industry to reduce cavitation, and presented evidence that the K-TEC patents reduced cavitation.  Mr. Dickson and Mr. Elgaaen testified that they had previously failed to solve the cavitation problem and that truncating the side wall led to an unexpected result.  K-TEC introduced evidence of commercial success both for its blender and the infringing Vita-Mix blender.  K-TEC also introduced evidence that Vita-Mix was unable to design around the fifth truncated wall.

Accordingly, the court agreed with the advisory jury verdict finding the K-TEC patents were not obvious.

Remittitur (Dkt. No. 839)

Vita-Mix has filed a renewed motion for judgment as a matter of law, a new trial, or for remittitur on damages. Because the court concludes that the testimony of K-TEC's damages expert, Lance Gunderson, was legally appropriate and the jury's damage award was amply supported by the evidence, the court denies Vita-Mix's motion.

A jury's factual determination of the amount of damages must be upheld unless the amount is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." State Contracting & Engineering Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1072 (Fed. Cir. 2003). A court should resolve any doubts about the amount of damages against the infringer. DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1309 (Fed. Cir. 2006).

In its motion and memorandum, Vita-Mix makes essentially the same arguments about K-TEC's damage theories that it has previously made. The court has already decided those issues and will not repeat its previous discussion and the reasons for its decision here.

Vita-Mix also contends that the evidence did not support the jury's damage findings. K-TEC, in its opposition memorandum, has listed some of the evidence it adduced on damages. (Dkt. No. 848). And a review of the trial record shows that the evidence was more than sufficient to sustain the jury's verdict. Therefore, the court denies Vita-Mix's motion.

Willfulness (Dkt. No. 841)

Vita-Mix next asks the court to set aside the jury's finding on willfulness, or, in the

alternative, for a new trial on the issue of willfulness.  But the evidence at trial was more than

sufficient to support the jury's finding that Vita-Mix's infringement was willful.  The court will

detail some of that evidence below in its discussion of K-TEC's motion for enhanced damages

and attorney's fees.

Vita-Mix's Motion to Strike the Testimony of Fred Smith (Dkt. No. 833)

Vita-Mix argues that the court should strike the testimony of K-TEC's expert witness

Fred Smith.  Mr. Smith consulted detailed notes when he testified about issues relating to

validity.  At trial, Vita-Mix objected to Mr. Smith's use of the detailed outline, which the court

overruled.  Vita-Mix obtained the notes and cross-examined Mr. Smith about them.

Vita-Mix argues that allowing Fred Smith's "scripted testimony" to stand would

be an error causing manifest injustice to Vita-Mix.  But as the court ruled during trial, Mr.

Smith's use of his notes was permissible under the Federal Rules Rules of Evidence.

Importantly, Vita-Mix had access to Mr. Smith's notes and was able to cross-examine Mr. Smith

about the contents of the notes.  Accordingly, the court denies Vita-Mix's motion to strike Mr.

Smith's testimony.

K-TEC's Motion for Enhanced Damages and Attorney Fees  (Dkt. No. 784)

K-TEC has filed a motion seeking  final judgment, enhanced damages and attorneys'

fees.  A court has discretion to determine whether to enhance damages and the extent of any

enhancement.  The court also has the discretion to award attorney fees in exceptional cases.

Enhanced Damages

"The paramount determination in deciding to grant enhancement and the amount thereof

is the egregiousness of the defendant's conduct based on all the facts and circumstances. The

court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating."  Read Corp. v. Portec, 970 F.2d 816, 826 (Fed. Cir. 1992)(citations omitted).  The court considers nine factors in deciding whether to enhance damages: "(1) deliberate copying; (2) the infringer's investigation and good-faith belief of invalidity or non-infringement; (3) litigation conduct; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the misconduct; (7) remedial action by the infringer; (8) infringer's motivation for harm; and (9) concealment."  Transclean Corp. v. Bridgewood Servs., 290 F.3d 1364, 1378 (Fed. Cir. 2002)(citing Read, 970 F.2d at 827).

### 1.    Deliberate Copying

Vita-Mix's deliberate copying of K-TEC's five-sided jars weighs heavily in favor of enhanced damages.  The court found in earlier orders that Vita-Mix copied K-TEC's five-sided jar: "Vita-Mix's initial response to K-TEC's five-sided jar in the marketplace was the development of the MP container, which the court has found is a direct copy of K-TEC's patented jar."  (Summ. J. Order, Dkt. No. 603 at 25.)  Moreover, K-TEC  presented substantial evidence that Vita-Mix deliberately copied K-TEC's blending jar even though Vita-Mix knew that K-TEC was likely to obtain a patent on the jar.  Jonathan Katz, the director of engineering at Vita-Mix, testified that although Vita-Mix considered other, design-around concepts,  it ultimately chose to continue its infringing design with the XP container.

Vita-Mix maintains that evidence of its subjective intent to copy K-TEC's design is not relevant to the objective prong of willfulness.  See In re Seagate Technology, LLC, 497 F.3d 1360, 1367 (Fed. Cir. 2007).  But the substantial similarity between the Vita-Mix products and the K-TEC design demonstrates an "objectively high likelihood"of willful infringement.

<u>Creative Internet Advertising Corp. v. Yahoo!</u>, Inc., No. 6:07-cv-354, 2009 WL 2382132 at *2 (E.D. Tex. Jul. 30, 2009).

Vita-Mix's arguments that its blending jars were based on the work of Brent Miller is not persuasive. The court addressed those arguments in earlier orders, including the order granting summary judgment for K-TEC that the Brent Miller's unpatented, undeveloped ideas did not anticipate the K-TEC patents. (<u>See</u> Order, April 13, 2010, Dkt. No. 543.) Although Vita-Mix contends that the jury should have heard Mr. Miller's testimony about his prior ideas and that the willfulness verdict would have been different had the jury been allowed to hear Mr. Miller's full testimony at trial, the court has already considered and rejected Vita-Mix's arguments. The court has previously given its reasons for limiting Mr. Miller's testimony and will not repeat those reasons again here.

        2.     <u>Vita-Mix's Knowledge of K-TEC Patents, Investigation of Scope and Good Faith Beliefs about Validity and Infringement</u>

Because Vita-Mix knew of K-TEC's patents and did not act in good faith, this factor weighs in favor of enhanced damages. K-TEC presented evidence that Vita-Mix was closely following the progress of K-TEC's efforts to obtain patent protection. For example, David Kolar told members of the Vita-Mix engineering staff that "K-Tech paid the filing fee on their patent, so Vita-Mix Corporation has two months to make the changes [sic] the XP containers and avoid infringements on the container." (Trial Ex. 25).

The evidence demonstrated that Vita-Mix made only an "invisible" change to its blending jar, and therefore continued to infringe K-TEC's invention. Nothing in the record shows that Vita-Mix took any steps to avoid infringement. And the court, through its earlier orders,

dismissed all but two of Vita-Mix's invalidity contentions.  The jury rejected the defenses based on substantial evidence.

Vita-Mix's argument that the PTO's  grant of reexamination and initial rejection of the patent claims is without merit in view of the entire PTO history.  That history has been recited in many of the pleadings of this case and the court will not repeat it here.  Finally, the fact that the court granted Defendant's motion to stay in this case is of limited significance.  The court granted the stay in order to allow the PTO to review Vita-Mix's invalidity contentions, subject to continued supervision by the court concerning discovery issues.  This decision was made to promote judicial economy, not because the court believed that Vita-Mix's invalidity contentions did or did not have merit.

### 3.    Litigation Behavior

This factor does not favor either side.  Although Vita-Mix raised nearly fifty invalidity defenses, most of which did not survive summary judgment, and an interfering patents counterclaim, which was without merit, K-TEC also brought claims that were ultimately determined to lack merit.  Vigorous litigation is not the same as litigation misbehavior.

### 4.    Size and Financial Condition

K-TEC presented evidence that Vita-Mix is financially strong.  K-TEC's damage expert's supplemental reports showed that Vita-Mix made approximately $44 million dollars in infringing sales.  And, although Vita-Mix's examination of Mr. Gunderson at the post-trial hearing, and Vita-Mix's arguments at the hearing raised questions about Mr. Gunderson's conclusion that Vita-Mix realized more than $23 million in gross profits from the sales, clearly, Vita-Mix made a substantial profit from the infringing sales. Accordingly, the court concludes that this factor

favors enhanced damages.

### 5. Closeness

This factor weighs in favor of enhanced damages. The court decided the issue of infringement on summary judgment. In addition, all but two of Vita-Mix's invalidity defenses were dismissed on summary judgment. K-TEC presented substantial evidence at trial showing that Vita-Mix's infringement was willful. This was not a close case.

### 6. Duration of Infringement

This factor favors enhanced damages. The '117 Patent issued on December 27, 2005. Vita-Mix continued to infringe the K-TEC Patents, going so far as to make only an invisible change to its XP container rather than design a non-infringing container.

### 7. Remedial Action

This factor favors enhancement of damages. Vita-Mix has presented no evidence that it took any remedial action to avoid its continued infringement. The invisible change was not a remedial action because it did not remedy the infringement.

### 8. Motivation to Harm

This factor weighs in favor of enhanced damages. The evidence showed that K-TEC and Vita-Mix were direct competitors and that Vita-Mix was intent on preventing large customers, such as Caribou Coffee, from purchasing the K-TEC blending jar. For example, Scott Hinckley, Vita-Mix's marketing director, wrote in an email, "Caribou Coffee called. They absolutely LOVE the new Blendtec container. . . . Blendtec is giving Caribou 40 machines to test in the field. The only way we can stop them from changing is to let the customer see the performance of our new container." (Tr. Ex. 100).

9. <u>Concealment</u>

Vita-Mix's attempt to coneal its infringing behavior also weighs in favor of enhanced damages. Although Vita-Mix contended that it had destroyed all its MP container inventory, the jury disagreed based on substantial evidence.

Because all of the <u>Read</u> factors weigh in favor of enhancement, the court grants K-TEC's motion to enhance damages. But the appropriate amount of enhancement is not an easy question. The jury awarded K-TEC over $11 million dollars in compensatory damages. Mr. Gunderson testified, as discussed above, that Vita-Mix made more than $23 million in gross profit from the infringing sales. But the court concludes that that figure is speculative. Accordingly, after weighing all of the evidence, the court finds that an enhanced damage award of $11 million is just: Vita-Mix will not profit from its infringing sales yet it will not be crippled by the combined damage awards. The court believes that this award is in accord with the observation of the Federal Circuit that "[t]he remedy of enhancement of damages not only serves its primary punitive/deterrent role, but in so doing it has the secondary benefit of quantifying the equities as between patentee and infringer." <u>SRI International, Inc. v. Advanced Technology Laboratories, Inc.</u>, 127 F.3d 1462, 1468 (Fed. Cir. 1997).

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Federal Circuit has instructed that when faced with a request for attorney fees, a court must conduct a two-step inquiry. The court must "determine whether there is clear and convincing evidence that the case is 'exceptional,' and, if so, whether an award of attorney fees to the prevailing party is warranted. . . ." <u>Interspiro USA, Inc. v. Figgie Int'l, Inc.</u>, 18 F.3d 927, 933-34 (Fed. Cir. 1994).

The jury found – and the record supports its finding – that K-TEC proved by clear and convincing evidence that Vita-Mix's infringement was willful. This finding, by itself, could be sufficient to qualify this case as "exceptional." See Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F. 2d 1320, 1329 (Fed. Cir. 1987). But an award of attorney fees is not automatic even when a jury finds that infringement was willful. Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1582 (Fed. Cir. 1992). A court should look at all the circumstances of the case, including any litigation misbehavior and if the prevailing party received an award of enhanced damages. Id.

In this case, Vita-Mix's conduct did not rise to the level necessary for the court to impose attorney fees. Although the jury found that it willfully infringed, Vita-Mix did not engage in other exceptional misbehavior that warrants an award of attorney fees. Importantly, Vita-Mix did not behave improperly during litigation, as discussed above. For that reason, the court concludes that an award of attorneys' fees is not warranted.

K-TEC's Motion to Amend the Judgment (Dkt. No. 787)

K-TEC seeks to amend the final judgment to include taxable costs, post-verdict damages, pre-judgment interest, and post-judgment interest. Vita-Mix opposes K-TEC's motion, contending that the court should exercise discretion and not award K-TEC pre-judgment interest. Vita-Mix also takes the position that post-verdict damages are inappropriate because K-TEC waived its right to receive post-verdict damages when it did not present its request in its pretrial order and because extrapolating the amount of damages is not sufficiently definite and violates Vita-Mix's right to have the damages assessed by the jury.

Since the decision in General Motors Corp. v. Devex Corp., 461 U.S. 648 (1983), an

award of prejudgement interest is the rule, not the exception. Nothing in Vita-Mix's opposition persuades the court that it should not follow the rule and award prejudgement interest. Vita-Mix did not respond to K-TEC's request to include taxable costs and post-judgement interest, and the court finds that inclusion of these items in the final judgement is appropriate.

The court grants K-TEC's motion on these issues subject to the resolution of disputes currently pending concerning K-TEC's bill of costs and the accounting of post-verdict sales that Vita-Mix will submit to the court.

K-TEC proposes three possible interest rates: (1) the statutory interest rate on a contract under Utah Code section 15-1-1(2); (2) K-TEC's borrowing rate during the period of infringement; or (3) Vita-Mix's borrowing rate during the period of infringement. Vita-Mix urges the court to use "a rate equal to the weekly average 1-year constant maturity Treasury yield." 28 U.S.C. § 1961.

Considering that pre-judgment interest is awarded in patent cases to make the patent holder whole, the court will apply K-TEC's borrowing rate during the period of infringement to calculate the pre-judgment interest. See Mikhon Gaming Corp. v. Acres Gaming, Inc., No. CV-S-97-1383, 2001 WL 34778689 at * 18 (Aug. 2, 2001). According to Lance Gunderson, K-TEC's actual borrowing rates were: 2006, 7.22%; 2007, 7.02%; 2008, 7.14%; 2009, 5.01%; 2010, 4.75%. Therefore $1,802,671 is the amount of prejudgment interest from December 27, 2005, when the '117 patent issued, to the entry of judgment on August 24, 2010.

Post-Verdict Damages

K-TEC seeks post-verdict damages either at a daily rate extrapolated from the jury's damages award or based on Vita-Mix's actual infringing sales from the time of the jury verdict to

the entry of the permanent injunction. Vita-Mix argues that K-TEC is not entitled to post-verdict damages because it did not specify that it was seeking such damages in the pretrial order and because the method of extrapolating damages is speculative. Vita-Mix wants a jury trial to determine the post-verdict damages. Vita-Mix points to no authority to support its request for a trial on this issue and the court denies the request.

In the pretrial order, K-TEC states "K-TEC has been damaged as a consequence of Vita-Mix's infringement, and is entitled to adequate compensation." (Pretrial Order at 2, May 26, 2010, Dkt. No. 600.) The term "adequate compensation" is broad enough to encompass post-verdict damages. See <u>Mikhon Gaming Corp.</u> 2001 WL 34778689 at *20 (finding a demand for damages in a pre-trial order preserved patentee's claim for post-verdict damages).

Vita-Mix next contends that extrapolating the damages from the jury award is inappropriate because Vita-Mix's president of sales testified that sales of the XP container had decreased over time. The court agrees that extrapolating average daily damages from the jury award is not appropriate. Therefore, the court orders Vita-Mix to submit an accounting of its infringing sales from June 17, 2010, through the date of this order. This accounting is due three weeks after the date of this order. After the court receives this accounting, the parties will have ten days after receipt of the order to submit simultaneous memoranda, not to exceed five pages, on the appropriate amount of post-verdict damages.

<u>K-TEC's Motion for Permanent Injunction</u> (Dkt. No. 791)

K-TEC wants the court to enjoin Vita-Mix from making, using, selling or offering to sale any products that infringe claim 4 of the '117 patent or claims 1 and 9 of the '842 patent, including but not limited to the Vita-Mix MP container, the Vita-Mix XP container and any

colorable imitations of those two containers.

"An injunction does not necessarily follow a determination that a patent has been infringed." Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1379 (Fed. Cir. 2008). The court should grant injunctive relief if a plaintiff shows that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, the balance favors the plaintiff and an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction. eBay, Inc. v. Merc Exchange LLC, 547 U.S. 388, 391 (2006); Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008). The decision whether to grant injunctive relief "rests within the equitable discretion of the district courts." eBay, 547 U.S. at 394.

Vita-Mix argues that K-TEC does not meet the eBay factors and specifically, that K-TEC's argument that the high-performance blending industry is a two-supplier market is not supported by the evidence. Vita-Mix also contends that if the court does enter an injunction, that K-TEC's proposed injunction is too broad. The court finds that K-TEC has met the four factors required for injunctive relief and grants the motion for an injunction. But the court agrees with Vita-Mix that K-TEC's proposed permanent injunction must be modified.

Irreparable Injury

The court considers both past and future harm to market share, revenues, and brand recognition to determine whether the patentee has suffered an irreparable injury warranting injunctive relief. i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 862 (Fed. Cir. 2010) ("Although injunctions are tools for prospective relief designed to alleviate future harm, by its

16

terms the first eBay factor looks, in part, at what has already occurred.").

K-TEC argues it has been and will be irreparably harmed because K-TEC and Vita-Mix are direct competitors in the commercial blending industry. Because of this relationship, K-TEC maintains that Vita-Mix's infringement deprived K-TEC of significant market share, eroded prices, and diluted the K-TEC brand. Vita-Mix responds that K-TEC cannot establish irreparable harm because its patents are invalid. But the jury decided that the K-TEC patents are valid and that Vita-Mix's XP and MP Containers infringed the K-TEC patents. For that reason, Vita-Mix's argument that no injunction should issue based on the invalidity of the K-TEC patents has no merit.

Vita-Mix also disputes K-TEC's contention that it will suffer prospective harm. Vita-Mix repeats its contention that K-TEC did not pursue damages based on price erosion and brand dilution, Vita-Mix and K-TEC are not direct competitors in a two-supplier market, and K-TEC delayed in obtaining the '117 patent and in seeking a preliminary injunction during the course of litigation.

Although K-TEC did not pursue damages based on price erosion and brand dilution, the evidence at trial did show that K-TEC's sales declined as Vita-Mix infringed its patents. And while the evidence at trial established that Vita-Mix and K-TEC are not the only source of high-performance blenders, the evidence made clear that the two companies are direct competitors. The fact that K-TEC and Vita-Mix are direct competitors is significant: "Courts awarding permanent injunctions typically do so under circumstances where the plaintiff practices its invention and is a direct market competitor." Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc., 579 F.Supp. 2d 554, 558 (D. Del. 2008). Even though K-TEC did not

immediately seek injunctive relief, this fact alone does not defeat the permanent injunction.  The

court concludes that K-TEC has established irreparable harm because it practices its patents and

directly competes with Vita-Mix in the marketplace.

Inadequate Remedy at Law

K-TEC argues that its remedy at law is inadequate because Vita-Mix's infringement

resulted in customers choosing to invest large amounts of money in Vita-Mix's blending system,

not simply the infringing blending jars.  The court agrees with K-TEC that monetary damages

would not be sufficient to compensate K-TEC for Vita-Mix's infringement.  The evidence at trial

showed that customers invested large sums of money in blending systems and therefore, were

likely to stay with the company whose blending system it had purchased.

Balance of Harms

Vita-Mix asserts that it would be significantly harmed from the entry of a permanent

injunction.  Vita-Mix has put forth no persuasive evidence of any harm it would suffer if the

court issues an injunction.  But K-TEC has shown that it would be harmed if Vita-Mix were

allowed to continue to sell the infringing product because Vita-Mix would continue to siphon

business from K-TEC leading to a devastating impact on K-TEC.  The balance of harms weighs

in favor of K-TEC.

Public Interest

Courts recognize the "strong public policy favoring enforcement of patent rights."  PPG

Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1567 (Fed. Cir. 1998).  Public interest

usually favors the patentee, with rare exceptions, such as when an infringer's product is

necessary to protect public health, national security, or other critical public interests.  See, e.g.,

18

Rite-Hite Corp. v. Kelly Co., Inc., 56 F.3d 1538, 1547 (Fed. Cir. 1995).  Vita-Mix responds that

the public interest would not be served because the K-TEC patents are invalid.  This argument

has been previously rejected by both the court and the jury.  The public interest clearly favors the

enforcement of K-TEC's patent rights.

Scope of Injunction

Vita-Mix argues that the scope of K-TEC's proposed injunction exceeds what is allowed

by Rule 65(d) of the Federal Rules of Civil Procedure which directs that "Every order granting an

injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C)

describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d).

"[T]he only acts [an] injunction may prohibit are infringement of the patent by the adjudicated

devices and infringement by devices not more than colorably different from the adjudicated

devices."  Int'l Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed. Cir. 2004).  "[A]

permanent injunction that simply prohibits future infringement of a patent is not specific enough

to comply with the requirements of Rule 65(d)."  Id.  Rule 65(d) allows the court to enter

injunctive relief against only the parties and those acting in behalf or in concert with the parties,

including the parties' officers, agents, servants, employees, and attorneys.

Subsections (a) and (b) of K-TEC's proposed injunction go beyond the scope allowed by

Rule 65(d) because they are not limited to the adjudicated devices – the MP and XP containers –

and any colorable imitations of those containers.  Simply striking "any products that satisfy every

limitation recited [the patented claims] including without limitation" from these paragraphs

brings the proposed injunction within the specificity requirements of Rule 65(d).

Vita-Mix also argues that subsection (c) of K-TEC's proposed injunction would

19

impermissibly prevent it from performing repairs on patented products for which K-TEC has already been compensated by the jury's damage award. Once a jury's damage award for infringement has been paid, an accused infringer acquires an implied license for those products that have already been sold and may repair the patented product without further infringing the patent. Fuji Photo Film Co. v. Int'l Trade Comm'n, 474 F.3d 1281, 1293-95 (Fed. Cir. 2007). But the accused infringer may not reconstruct the patented product. Id. at 1296. "[R]eplacement of a part that must be broken or removed to repair the device does not convert permissible repair into impermissible reconstruction." Id.

The language of subsection (c) would enjoin Vita-Mix from conducting permissible repairs as well as impermissible reconstruction of the patented products. Additionally, the subsection is unnecessary because if Vita-Mix engages in impermissible reconstruction of the patented products, it will be in violation of subsections (a) and (b). Therefore, the court declines to enjoin Vita-Mix from repairing the MP and XP containers that it has already sold.

Finally, Vita-Mix objects to providing notice of the injunction to third parties, including its present and past customers who merely use the MP or XP container. Subsection (c) requires Vita-Mix to notify not just those who manufacture and sell the MP and XP containers, but customers who may use the containers. K-TEC has been compensated for the use of its patents by those customers, and those customers will not be subject to the injunction. The court will require Vita-Mix to notify only those third parties who will be affected by the injunction. The permanent injunction filed herewith will reflect the court's response to Vita-Mix's objections.

ORDER

1.     The court DENIES Vita-Mix's motions for judgment as a matter of law or

in the alternative a new trial on the grounds of non-infringement, testimony, anticipation, obviousness, damages and willfulness because the jury verdict on these issues is supported in the trial record.  (Dkt. Nos. 831, 835, 837, 839, 841)

2.  The court DENIES Vita-Mix's motion to strike the trial testimony of Fred Smith because the testimony was not improperly scripted.  (Dkt. No. 833)

3.  The court DENIES Vita-Mix's motion for remittitur.  (Dkt. No. 839)

4.  The court GRANTS K-TEC's motion for enhanced damages and awards K-TEC $11 million in enhanced damages.  (Dkt. No. 784)

5.  The court DENIES K-TECs motion for attorney fees.  (Dkt. No. 784)

6.  The court GRANTS K-TEC's motion to amend the final judgment to include taxable costs, post-verdict damages, pre-judgment interest, and post-judgment interest. (Dkt. No. 787).

    a.  Vita-Mix shall pay K-TEC's taxable costs.

    b.  Vita-Mix shall submit an accounting of all infringing sales from June 17, 2010 to the date of this order within three weeks of the date of this order.  The parties then have ten days to submit simultaneous memoranda, not to exceed five pages, on the appropriate amount of post-verdict damages.

    c.  The court awards $1,802,671 in prejudgment interest, which covers from the date of initial infringement to the entry of judgment on August 24, 2010.

d.      Vita-Mix shall pay post-judgment interest from the date of entry of

judgment, August 24, 2010, at a rate equal to the weekly average 1-

year constant maturity Treasury yield compounded annually

pursuant to 28 U.S.C. § 1961.

7.      The court GRANTS K-TEC's motion for permanent injunction.  (Dkt. No.

791).

DATED this   26    day of January, 2011.


                              BY THE COURT:

                              _____
                              TENA CAMPBELL
                              United States District Judge